JENKINS, Appellant,

v.

CITY OF GALLIPOLIS et al., Appellees.

[Cite as *Jenkins v. Gallipolis* (1998), 128 Ohio App.3d 376.]

Court of Appeals of Ohio,
Fourth District, Gallia County.

No. 97CA14.

Decided June 16, 1998.

378

☞643

*David T. Evans,* for appellant.

*Douglas M. Cowles,* for appellee city of Gallipolis.

*Glen A. Dugger* and *Nancy Truit Blosser,* for appellee JDN Development Co., Inc.

KLINE, Judge.

R. William Jenkins appeals the decision of the Gallia County Court of Common Pleas affirming the Gallipolis Planning Commission's decision to grant JDN Development Co., Inc. ("JDN") permission to build a Wal–Mart store. The trial court found that Jenkins did not have standing to challenge the planning commission's decision. Jenkins asserts that the trial court erred by comparing his situation only to that of his neighbors. We agree, because the law defines the relevant comparison group as all or a large part of the community at large. Jenkins also asserts that the trial court erred by considering standing, because neither JDN nor the city of Gallipolis challenged his standing at the administrative level. We disagree, because Jenkins was not a party to the administrative proceeding. Finally, Jenkins asserts that the trial court abused its discretion by refusing to admit his expert's opinion projecting future traffic volume. We disagree, because Jenkins did not show that his expert, a real estate appraiser, possessed specialized knowledge, skill, experience, or expertise in the area of traffic projections. Accordingly, we affirm in part and reverse in part the judgment of the trial court.

I

JDN applied to the planning commission for conditional use of land located on State Route 7 ("Eastern Avenue") in Gallia County, Ohio, for the construction and operation of a Wal–Mart store. The planning commission held a public hearing on the application, during which Jenkins voiced objections. Jenkins owns proper-

ty less than one-half mile from the site of the proposed Wal–Mart, which, though not on Eastern Avenue, is accessible only from Eastern Avenue. Jenkins also served the planning commission and all interested parties with written notice of his intent to pursue the matter in court if the planning commission did not deny JDN's application.

The planning commission approved the issuance of a zoning certificate to JDN. Jenkins filed a complaint/appeal against the city and JDN in the Gallia County Court of Common Pleas, asserting that JDN's construction of a Wal–Mart would greatly diminish the value and usefulness of his property.

JDN and the city each moved the trial court to dismiss Jenkins's appeal on the grounds that Jenkins lacked standing. The court reserved ruling on the motion and proceeded to hear evidence. Jenkins presented the expert testimony of a real estate appraiser, who gave his opinion without objection that the commercial service and light industrial tenants to whom Jenkins's property is suited find excessive retail traffic undesirable. Jenkins also introduced studies from the Ohio Department of Transportation reflecting traffic counts before and after the construction of a Wal–Mart in various rural Ohio towns along similar roads. JDN objected, however, when Jenkins asked his expert to give his opinion as to what extent traffic would increase on Eastern Avenue after the construction of a Wal–Mart. The court reserved ruling on JDN's objection. JDN introduced, without objection, a real estate appraiser's expert opinion that Jenkins's property would increase in value after Wal–Mart opens.

The trial court found that Jenkins did not have standing to appeal the planning commission's decision, because Jenkins had not demonstrated that the decision caused him any harm greater than that suffered by others on or near Eastern Avenue. In so ruling, the trial court sustained JDN's objection to Jenkins's expert's opinion as to future traffic counts on Eastern Avenue, but concluded in its analysis that Jenkins had failed to establish standing even with the expert testimony.

Jenkins timely appealed and asserts the following assignments of error:

"I. The trial court erred in finding that appellant lacked standing to challenge the decision of the Gallipolis Planning Commission in an administrative appeal pursuant to R.C. 2506.01 et seq.

"II. The trial court erred in sustaining the motion to dismiss where appellees waived any objection to appellant's standing in the underlying administrative proceeding.

"III. The trial court abused its discretion and committed reversible error in excluding and disregarding the opinion evidence of appellant's expert appraiser."

## II

R.C. 2506.04 delineates the roles of common pleas and appellate courts in reviewing administrative decisions as follows:

"The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause * * *. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code."

■ Thus, the court of appeals' role in R.C. 2506.04 appeals is limited to reviewing questions of law, which the court reviews *de novo*, and to determining whether the trial court abused its discretion in applying the law. *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 29–30, 465 N.E.2d 848, 852, fn. 4; *Lawson v. Foster* (1992), 76 Ohio App.3d 784, 603 N.E.2d 370. In *Kisil*, the court commented that R.C. 2506.04 "grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." *Id.; Prokos v. Athens City Bd. of Zoning Appeals* (July 13, 1995), Athens App. No. 94CA1638, unreported, 1995 WL 416947. The court further stated that "[w]ithin the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court." *Id.; accord Irvine v. Ohio Unemp. Comp. Bd. of Rev.* (1985), 19 Ohio St.3d 15, 20, 19 OBR 12, 16–17, 482 N.E.2d 587, 591–592; *Wurzelbacher v. Colerain Twp. Bd. of Trustees* (1995), 105 Ohio App.3d 97, 100, 663 N.E.2d 713, 714–715. "The term 'abuse of discretion' connotes more than an error of law of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137, 566 N.E.2d 1181, 1184.

## A

■ The common-law doctrine of standing holds that only those parties who can demonstrate a present interest in the subject matter of the litigation and who have been prejudiced by the decision of the lower court possess the right to appeal. *Willoughby Hills v. C.C. Bar's Sahara* (1992), 64 Ohio St.3d 24, 26, 591 N.E.2d 1203, 1204–1205, citing *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.* (1942), 140 Ohio St. 160, 161, 23 O.O. 369, 369, 42 N.E.2d 758, 758–759. The burden of proof to establish standing lies with the party seeking to appeal.

*Id.; Zelnick v. Troy City Council* (1997), 85 Ohio Misc.2d 67, 74, 684 N.E.2d 381, 385.

In *Roper v. Richfield Twp. Bd. of Zoning Appeals* (1962), 173 Ohio St. 168, 18 O.O.2d 437, 180 N.E.2d 591, syllabus, the Supreme Court of Ohio determined that standing to bring an administrative appeal under R.C. 2506.01 lies with "[a] resident, elector and property owner of a township, who appears before a township Board of Zoning Appeals, is represented by an attorney, opposes and protests the changing of a zoned area from residential to commercial, and advises the board, on the record, that if the decision of the board is adverse to him he intends to appeal from the decision to a court." The court later narrowed the class of persons who possess standing to those whose property rights are "directly affected" by the contested administrative order. *Schomaeker v. First Natl. Bank* (1981), 66 Ohio St.2d 304, 311–312, 20 O.O.3d 285, 289–290, 421 N.E.2d 530, 536–537.

The *Schomaeker* court did not limit the class of persons possessing standing to contiguous or adjacent property owners. See *Willoughby Hills, supra,* 64 Ohio St.3d at 27, 591 N.E.2d at 1205–1206; *Am. Aggregates Corp. v. Columbus* (1990), 66 Ohio App.3d 318, 322, 584 N.E.2d 26, 28–29. Rather, "[t]he 'directly affected' language in *Schomaeker* merely serves to clarify the basis upon which a private property owner, as distinguished from the public at large, [can] challenge the board or zoning appeals' [decision]." *Willoughby Hills* at 27, 591 N.E.2d at 1205. Thus, "a private property owner across town, who seeks reversal of the granting of a variance because of its effect on the character of the city as a whole, would lack standing because his injury does not differ from that suffered by the community at large." *Id.*

To determine if a person falls within the class of directly affected persons, we "must look beyond physical proximity to determine if the order constitutes a determination of the rights, duties, privileges, benefits or legal relationships of a specified person." *Am. Aggregates Corp.,* 66 Ohio App.3d at 322, 584 N.E.2d at 29; *Westgate Shopping Village v. Toledo* (1994), 93 Ohio App.3d 507, 513, 639 N.E.2d 126, 129–130. Generally, "concerns regarding increased traffic * * * are concerns shared equally by the public at large and, therefore, are not adequate grounds upon which to confer standing to bring an appeal pursuant to R.C. 2506.01." *Id.* at 513–514, 639 N.E.2d at 130. However, evidence that the challenging party's property value may be reduced by a decision of the zoning board constitutes a direct effect sufficient to confer standing. *Id.,* citing *Stoll v. Gulf Oil Corp.* (C.P.1958), 79 Ohio Law Abs. 145, 155 N.E.2d 83. In contrast, evidence that the challenging party's property will benefit from a zoning board decision does not constitute a direct effect for the purpose of establishing standing. See Meck & Pearlman, Ohio Planning and

Zoning Law (1997 Ed.) 560–561, Section 14.5, citing *Richards v. Marlboro Twp. Bd. Of Zoning Appeals* (Oct. 25, 1983), Stark App. No. CA6204, unreported, 1983 WL 7116.

■ In this case, the parties agree that Jenkins complied with the standing requirements outlined in *Roper* and that Jenkins owns property less than one-half mile from the site of the proposed Wal–Mart. Jenkins asserts that he is also directly affected by the grant of conditional use to JDN because his property value will decrease due to the traffic drawn to Wal–Mart. JDN and the city assert that Jenkins has not alleged adequate grounds to establish standing because, pursuant to *Westgate Shopping Village,* increased traffic alone cannot serve as the basis for standing as a matter of law. The trial court found that Jenkins's entire basis for standing is that his properties will decrease in value due to the increase in traffic expected on Eastern Avenue.

While JDN and the city correctly state that increased traffic alone will not confer standing, they overlook that *Westgate Shopping Village* also stands for the proposition that allegations of decreased property value do constitute unique harm sufficient to establish standing. *Id.,* 93 Ohio App.3d at 514, 639 N.E.2d at 130–131. Jenkins did not, as JDN and the city argue, base his claim of standing solely on increased traffic. Rather, Jenkins asserted that his property value would decrease due to an increase in traffic. In our view, this type of decrease in property value is precisely the sort contemplated by the court in *Westgate Shopping Village.* Therefore, we find that Jenkins alleged adequate grounds for standing.

■ Jenkins next asserts that he presented evidence that proves his allegation that his property value will decrease and that the trial court incorrectly stated and applied the law. Specifically, Jenkins asserts that the trial court erred by comparing his situation with that of other property owners adjacent to the proposed Wal–Mart site, rather than comparing his situation to the Gallipolis community at large. In support of this assertion, Jenkins refers to the trial court's judgment entry, wherein the court found that "increased traffic will not be unique to Jenkins, but will affect all commercial properties on or near Eastern Avenue." Jenkins argues that this statement reflects that the trial court incorrectly defined the relevant comparison group as the property owners near the site and, therefore, that the trial court erred as a matter of law.

JDN and the city assert that the trial court correctly examined the harm incurred by Jenkins relative to that incurred by a large class of citizens. They point out that the trial court's decision incorporated by reference an earlier entry wherein the court engaged in an extensive review of the law defining direct harm versus a generalized grievance. Because the trial court correctly stated the law

in its earlier entry, JDN and the city reason that the trial court clearly did not misinterpret the law before applying it to Jenkins. Rather, they assert that the error alleged by Jenkins occurred, if at all, only in the court's application of the law. Therefore, JDN and the city urge us to review this issue under the abuse-of-discretion standard of review. Finally, JDN and the city assert that the trial court did not abuse its discretion in determining that the harm alleged by Jenkins is merely a generalized grievance.

We find that the trial court erred as a matter of law by comparing the harm suffered by Jenkins to that of other owners of property "on or near Eastern Avenue." While the trial court did state in a previous entry that the relevant comparison group is the community at large, the court never engaged in such a comparison in its final judgment entry. Selecting the relevant comparison group was not a matter within the court's discretion; only the analysis of whether the comparison revealed a unique harm was within its discretion. Thus, the trial court erred as a matter of law in selecting an improper comparison group.

JDN nevertheless asks us to affirm the judgment of the trial court because Jenkins did not satisfy his burden of proof to establish standing. The trial court found that the evidence presented by Jenkins was highly speculative. JDN contends that Jenkins's evidence is at best equally balanced with the evidence offered by JDN and the city. Further, JDN asserts that "[w]here the evidence is equally balanced, allocation of the burden of proof on the issue is determinative of the outcome." *Zelnick*, 85 Ohio Misc.2d at 74, 684 N.E.2d at 385. Thus, JDN urges us to affirm the judgment of the trial court on the basis that Jenkins did not satisfy his burden of proof.

As we stated above, the General Assembly conferred jurisdiction upon us in administrative appeals through R.C. 2506.04. R.C. 2506.04 grants the court of appeals the limited power to review the judgment of the common pleas court only on questions of law. *Kisil, supra.* The General Assembly did not vest this court with the power to weigh the evidence like a common pleas court. *Id.* Therefore, we decline to engage in an analysis of whether Jenkins presented evidence that outweighed the evidence presented by JDN and the city.

Accordingly, we sustain Jenkins's first assignment of error.

### III

In his second assignment of error, Jenkins asserts that the trial court erred by ruling that JDN and the city did not waive their right to challenge his standing to file a lawsuit. Jenkins contends that JDN and the city waived their ability to challenge his standing by failing to object to Jenkins's right to speak before the planning commission. In support of his argument, Jenkins cites

*Trademark Homes v. Avon Lake Bd. of Zoning Appeals* (1993), 92 Ohio App.3d 214, 634 N.E.2d 685, wherein the court found that the board of zoning appeals waived its right to contest Trademark Homes' standing by failing to raise the issue when Trademark Homes requested a zoning variance. *Id.* at 217, 634 N.E.2d at 687–688.

JDN and the city assert, and the trial court found, that *Trademark Homes* is significantly distinguishable on its facts from the present case. We agree. In *Trademark Homes,* the zoning board contested the standing of the applicant, a party to the administrative adjudication. A court or administrative body errs when it allows a party to the litigation to proceed without standing. See *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm. of Ohio* (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E.2d 758. Such an error is waived if not raised. *Trademark Homes,* 92 Ohio App.3d at 217, 634 N.E.2d at 687–688. However, a court or administrative body does not err by failing to require those who are not parties to the litigation to have standing. It is nonsensical to suggest that a party can waive an error where no error occurred. Simply put, the question of whether an individual has standing in a particular action is irrelevant unless that individual becomes a party to the action.

Jenkins appeared at the planning commission hearing not as a party, but as a member of the public opposed to the conditional use permit sought by JDN. We reject Jenkins's assertion that the fact that he was very vocal at the hearing gave him in effect the status of a party. Jenkins first entered an appearance as a party to the instant action by filing an appeal with the common pleas court. Therefore, the trial court did not err in concluding that JDN and the city did not waive their right to contest Jenkins's standing by waiting until after he had filed his appeal with the common pleas court.

Accordingly, we overrule Jenkins's second assignment of error.

### IV

In his third assignment of error, Jenkins asserts that the trial court abused its discretion by sustaining JDN's objection to his expert's opinion on the effect of the opening of a Wal–Mart on future traffic volume. Jenkins asserts that the trial court abused its discretion by excluding the opinion of his expert while allowing JDN's expert, who held substantially similar qualifications, to proffer his opinion.

A trial court has broad discretion in admitting and excluding expert testimony. *Scott v. Yates* (1994), 71 Ohio St.3d 219, 221, 643 N.E.2d 105, 106–107. A reviewing court cannot reverse a trial court's evidentiary rulings unless the trial

court abused its discretion. *Id.* Evid.R. 702 applies to the testimony of expert witnesses and provides as follows:

"A witness may testify as an expert if all of the following apply:

"(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

"(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

"(c) The witness' testimony is based on reliable scientific, technical, or other specialized information."

Both Jenkins and JDN used expert opinions of real estate appraisers with substantially similar qualifications in presenting their cases. Without objection from JDN or the city, Jenkins's expert gave an opinion about the value and best use of Jenkins's property, the content of certain traffic studies recorded with the Ohio Department of Transportation, and the effect the proposed Wal–Mart would likely have on Jenkins's property value. JDN did object, however, to Jenkins's expert offering his opinion on how much the volume of traffic along Eastern Avenue would increase in the event of a Wal–Mart opening. JDN asserted, and the trial court agreed, that Jenkins's expert did not possess any specialized knowledge, experience, skill, training, or education enabling him to project traffic counts. Therefore, the trial court excluded the expert's opinion testimony on this matter.

Jenkins's sole support for his assertion that the trial court abused its discretion in excluding his expert's opinion rests upon the trial court's admission of JDN's expert's opinion. We note that Jenkins did not object to JDN's expert. Further, Jenkins overlooks the fact that JDN's expert did not testify as to projected traffic volume. Jenkins offered no evidence establishing that his expert possessed any special knowledge, experience, skills, training, or education beyond that of the average lay person. The fact that Jenkins's expert was unquestionably qualified as a real estate appraisal expert does not render him a traffic expert as well.

We find that the trial court did not abuse its discretion by excluding Jenkins's expert's opinion regarding the extent to which traffic would increase or change upon the opening of Wal–Mart. Accordingly, we overrule Jenkins's third assignment of error.

V

In conclusion, we find that the trial court erred as a matter of law by comparing Jenkins only to others on Eastern Avenue, rather than to the

Gallipolis community at large. However, the trial court did not abuse its discretion by allowing JDN and the city to challenge Jenkins's standing or by excluding a portion of Jenkins's expert's testimony. Accordingly, we affirm the trial court's judgment in part, reverse it in part, and remand this case to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

STEPHENSON, P.J., and HARSHA, J., concur.