DECISION AND JUDGMENT ENTRY
This is an accelerated appeal from a January 29, 1999 opinion and judgment entry of the Lucas County Court of Common Pleas in which the court affirmed the decision of appellee, the Sylvania Township Board of Zoning Appeals ("the zoning board"), denying a request for a variance filed by appellants, Brian Dutton and Jeanette Dutton, to place a manufactured home with HUD certification, but without Ohio Building Code Certification, on three lots located in Sylvania Township, Ohio. The trial court found that the zoning board's decision was supported by the preponderance of substantial, reliable, and probative evidence and was not unconstitutional, illegal, arbitrary, capricious, or unreasonable. Appellants, acting pro se, then filed this appeal. Before addressing the arguments of the parties, we will first review the facts and procedure in this case.
The record shows that appellants appeared at a hearing before the zoning board on March 23, 1998. The transcript from the hearing includes several sections that were inaudible. However, we can discern the following information from the portions which are transcribed.
Appellant Brian Dutton spoke to the zoning board and said he was seeking "a variance as for the requirement of an OBC letter * * *" for the modular home appellants owned and wanted to place on three lots in Sylvania Township, Ohio. He told the zoning board: "The Health Department has worked with me on this so that I'll be able to get a septic system installed. If need be, I could start tomorrow." He explained:
 "And what I'm asking for is not a radical departure from what's already there. There's homes already in that neighborhood that are similar in design and construction.
 "I've gone to great length to make sure that this is the only variance that I'm going to have to ask for. I approached Mr. Szabo to make sure that the placement of the home is done within the build lines. And any future construction that I will be — that I am to do will be done within the build lines also should it become necessary. Like, for instance, I'm going to be adding a front porch, that will still be within the build lines, the placement of the home."
Some discussion ensued between individuals who are all identified in the transcript from the hearing only as "VOICE", but who from the context seem to be members of the zoning board. The discussion included concerns that there were deed restrictions for the subdivision "specifically saying that you cannot put one of these homes in the subdivision" and that amendments to the zoning resolutions established a ban on placing homes without an Ohio Building Code Certification in the township unless it was placed in a mobile home park.
Next, a man stepped forward and introduced himself as an adjoining property owner. He was allowed to speak after he answered that he had "signed in". He said he could not see how a leach field sewer system could be installed on the property when there is "water at least eight months of the year." He said all the neighbors had wells and they did not want their wells contaminated. He said there was no place for the surface water to go. He said:
 "You'd have to raise the property, then where is the water going to go again? It's not going to meet our perk test. And I don't know if you know what a perk test, they come out and drill a hole in the ground and see how long it takes for the water to go down, it ain't going to do it. That's my concern."
One member of the zoning board asked if the neighbor really knew if a septic tank could be installed, and the neighbor answered: "I can't tell you something I don't know nothing about, I better not (inaudible)." The exchange between the zoning board member and the neighbor continued:
"MR. JEFFERY: But you don't know?
"MR. REED: No — yeah —
"MR. JEFFERY: You're guessing.
 "MR. REED: They're going to have to raise the ground to do it."
Immediately after that exchange, a second adjoining property owner spoke to the zoning board, again after affirming that she had "signed in".
The second adjoining property owner said the back portion of her property was a "swamp". She said she gets runoff water from condominiums that were built on the north side of her property. She said she runs some of the water into a pond, but that she could not dispose of all of the water that way and that some of it runs onto the property on which appellants wanted to place their modular home. She said:
 "Now, my question is: There's no way a leach field is going to drain, its's sitting there. And if he builds up higher, what, now, you're going to really put me in a hole? You know. How do you keep letting people change the elevations and lines?"
Following her statements, more discussion continued. A person identified only as "VOICE" in the transcript, who seems to be a board member said that he was "a tad more concerned" about whether the township could restrict appellants from placing a modular home in the subdivision based upon general deed restrictions. Discussion then centered on the right of the township to restrict placement of modular homes, as long as the township did provide some areas that were approved for modular homes. Statements were made that certain requirements had to be met before a variance could be granted, and the zoning board could not waive those requirements "willy nilly".
Appellant Brian Dutton replied that they were absolutely correct. He explained that he had been on the property with an official from the Health Department, and the official had thoroughly discussed with him the layout of the septic system and the placement of the house so that all setback requirements could be met. He said he did not buy a modular home with Ohio Building Code Certification because he was told at the time of purchase that the HUD certification was sufficient. He also said that if he was building a house on the property with the same dimensions and the same "sanitaries" he would not have to seek any variance at all.
A zoning board member then made a motion as follows:
 "Move that we approve the application for Brian and Jeannie Dutton, permit the placement of an HUD-certified home on the property * * * as a variance as provided by Section 1205 of the Sylvania Township Zoning Regulations."
The motion was seconded. Some more discussion ensued about previous statements regarding the property's runoff problems and the need for prior approval from the board of health for solutions. Appellant Brian Dutton again spoke explaining where the board of health personnel had told him he could place a leach field. Discussion then ended, a vote was taken, and all members of the zoning board voted no regarding appellants' application for a variance. The record does not include any explanation from the board regarding the basis of its vote.
Appellants then filed an appeal in the Lucas County Court of Common Pleas. Appellants raised only one argument to support their appeal: they argued that their application for a variance was denied solely on the basis that their manufactured home was certified to meet HUD requirements but not Ohio Building Code requirements. They argued that the federal government preempted the ability of a state to regulate the placement of mobile homes through zoning requirements, so the denial of their variance request was unconstitutional.
The trial court considered and rejected appellants' argument, citing to previous authority from this court and others that held that even though the federal government has preempted states from regulating building codes for manufactured homes, there is no preemption of state rights to regulate the placement of manufactured homes through zoning laws. Village of Moscow v.Skeene (1989), 65 Ohio App.3d 785, 791; Westfall v. Village ofWest Unity (Jan. 31, 1997), Williams App. No. WM-96-011, unreported. The trial court said: "Having established that the HUD Act does not preempt state and local legislation regarding zoning matters, it must next be considered whether or not the Sylvania Township Board of Zoning Appeals acted in an unconstitutional, illegal, arbitrary, capricious, or unreasonable manner in denying appellants' application, or whether it has made a decision unsupported by the preponderance of substantial, reliable, and probative evidence."
The trial court noted that appellants believed the sole reason for the denial of their variance request was the fact that their modular home was not certified under the Ohio Building Code. However, the trial court said that the zoning board argued that appellants were wrong; that the real reason for the denial of their request for a variance was "concerns about the feasibility of the proposed leach field which would be required as part of the septic system, as well as the size of the house in relation to the size of the lots."
The trial court agreed with the zoning board and said:
 "From review of the transcript of proceedings, it becomes apparent that although appellants' lack of OBBC certification was widely discussed, what actually prompted denial of appellants' application was appellee's concern about whether this particular property could support a leach field, and the effect that an approval of the application would have on the land of those individuals who own property in the vicinity of the proposed location. Specifically, several residents voiced concerns about the potential for contamination of their wells, and thus their drinking water, as well as concerns about their property becoming virtual swamps. Transcript of Proceedings at 12-16. Review of the whole record illustrates concerns unrelated to whether or not the manufactured home was OBBC-certified. As such, the decision of the Board is not unsupported by the preponderance of substantial, reliable, and probative evidence, and is not unconstitutional, illegal, arbitrary, capricious, or unreasonable. The Board's decision is, therefore, affirmed."
Appellants then filed their appeal in this court.
 As the Fourth District Court of Appeals recently noted: "Administrative appeals undertaken from zoning appeals boards are governed by R.C. Chapter 2506. Castle Manufactured Homes, Inc. v. Tegtmeier, 1999 Ohio App. LEXIS 4519 (Sep. 27, 1999), Wayne App. No. 98CA65, unreported. The first appeal is directed to the common pleas court of the county wherein the zoning board of appeals is located. R.C. 2506.01. That court reviews the decision of the board to make sure that it is not unconstitutional, illegal, arbitrary, capricious or unreasonable and that it is supported by the preponderance of substantial, reliable and probative evidence. R.C. 2506.04; also see Dudukovich v. Housing Authority (1979), 58 Ohio St.2d 202, 207, 389 N.E.2d 1113, 1117. The common pleas court must presume that the decision it is reviewing is reasonable and valid and refrain from substituting its judgment for that of the zoning appeals board. See generally Community concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals
(1993), 66 Ohio St.3d 452, 456, 613 N.E.2d 580, 584; Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34, 465 N.E.2d 848, 852. If any further appeal is taken, the courts of appeals are limited to considering questions of law. R.C. 2506.04. This essentially requires us to consider whether the common pleas court abused its discretion in affirming the decision of the zoning appeals board. See Jenkins v. Gallipolis (1998), 128 Ohio App.3d 376, 381, 715 N.E.2d 196, 199; Prokos v. Athens City Bd. of Zoning Appeals (1995) Ohio App. LEXIS 2999 (Jul. 13, 1995), Athens App. No. 94CA1638, unreported; Morris v. Houseman, 1992 Ohio App. LEXIS 243 (Jan. 13, 1992), Ross App. No. 1763, unreported." Casto v. Village of Commercial Point (Dec. 22, 1999), Pickaway App. No. 99 CA 2, unreported.
Keeping these standards of review in mind, we now turn to the issues that are presented in this case.
We first address the issue of whether appellants have standing to bring this appeal. The zoning board says appellants did not have standing to seek a variance for the property in question because they did not actually own the property when the hearing was held and the variance was denied. Ohio courts have consistently ruled that if a court or administrative board allows a party to proceed to an administrative hearing or to litigation without standing, an error is committed. However, that error is waived if it is not raised at the time the administrative hearing or court litigation is commenced. See, e.g., Jenkins v. City ofGallipolis (1998), 128 Ohio App.3d 376, 385; Trademark Homes v.Avon Lake Bd. of Zoning Appeals (1993), 92 Ohio App.3d 214, 217. The transcript from the hearing shows that appellant Brian Dutton told the zoning board that the "seller's realtor" and his own realtor were present to answer any questions the board may have, so arguably there was some evidence in the record to show that appellants did not own the property when they asked for the variance and the hearing was held. However, even if it is arguable that appellants needed to show they had ownership or an option to purchase the property or a contingent purchase contract for the property at the time they filed a request for a variance and the hearing was held, see, e.g., Duffy v. Bd. of Building andZoning Appeals of the City of Willoughby Hills (Aug. 21, 1992), Lake App. No. 91-L-068, unreported; Norris v. Chester Twp. Bd. ofTrustees (Aug. 16, 1991), Geauga App. No. 90-G-1585, unreported, the record clearly shows that no objection to their standing was filed in the administrative proceedings, so any lack of standing that may have existed is waived. See, e.g., Jenkins v. City ofGallipolis (1998), 128 Ohio App.3d 376, 385; Trademark Homes v.Avon Lake Bd. of Zoning Appeals (1993), 92 Ohio App.3d 214, 217.
Having determined that appellants may proceed with their appeal, we turn to the essence of the arguments they have presented to this court; that the trial court abused its discretion when it ruled that the zoning board's reason for denying their variance from the requirement for Ohio Building Code Certification was based upon concerns relating to the installation of a sewer on the property that were supported by probative, reliable evidence.
The Tenth District Court of Appeals considered an appeal relating to an application for a conditional use permit in which it noted that: "both applications for variances and applications for permits, * * * require adjudication hearings, not legislative hearings." In re Rocky Point Plaza Corp. (1993), 86 Ohio App.3d 486,491. The court went on to explain:
 "In other words, there is no public hearing upon an application for a variance * * * but, instead, an adjudication hearing, which is open to the public. A public hearing is one where members of the general public may speak and express their views on the question of governmental, political and policy considerations as to whether certain legislation should be adopted. Adjudication hearings, however, are not subject to such public comment but, instead, involve the determination of rights of specific persons and whether such rights should be granted based upon evidence (not public opinion) presented at the hearing. Therefore, different procedures are necessary and different rules apply. Only variances and conditional use permits (and some other permits) come before a board of zoning appeals in the ordinary situation.
"* * *
 "Accordingly, in the limited weighing of the evidence to be undertaken by the common pleas court, consideration must be given to the nature of the evidence, including the question of whether it was given under oath and was subject to cross-examination. R.C. 2506.03 expressly provided that if the `testimony adduced was not given under oath,' the appellant upon application should be permitted to present additional evidence in the common pleas court upon appeal. Appellant did not seek this remedy so as to present proper evidence under oath and to be afforded the opportunity to cross-examine witnesses." Id. at 491-493.
The court found that "unsworn statements made by various persons * * * do not constitute substantial, reliable and probative evidence." Id. at 496. The court found that since the appellant did not follow procedure by asking the trial court to hear proper evidence itself, pursuant to R.C. 2506.03, there was no substantial, reliable or probative evidence to support either the denial or the granting of the application for a conditional use permit in that case. Id. at 496. The court reversed the decision of the trial court and remanded the case to the zoning board "for an appropriate hearing with witnesses being sworn, opportunity for cross-examination being afforded and the making of specific conclusions of facts supporting the decision as contemplated by R.C. 2506.03 and to make the determinations required by [the city code]." Id.
Although the case from the Tenth District Court of Appeals related to an appeal from an application for a conditional use permit, we find the same reasoning is applicable in this case, since a request for a variance is governed by the same statutory provisions. Neither the trial court nor this court can tell from the existing record the real reason(s) for the zoning board's denial of appellants' request for a variance from the requirement that their home be certified under the Ohio Building Code. What is clear from the record is that appellants did not receive due process at the hearing that was held, since none of the persons who spoke to the zoning board were sworn in, none of the persons who spoke were subject to cross-examination, and the zoning board did not file any conclusions of fact to support its final decision. Accordingly, we find appellants' assignment of error with three issues well-taken to the extent that we must conclude the trial court abused its discretion in this case when it ruled that there was substantial, reliable, probative evidence in the record to support the decision of the zoning board.
Like the Tenth District Court of Appeals in In re RockyPoint Plaza Corp., 86 Ohio App.3d at 496-497, we conclude that the appropriate remedy in this case is to remand the case to the zoning board for a new hearing and determination. We decline to address the implication raised by the zoning board that this entire case may be moot because the variance granted by the board of health for installing a sewer system may be expired since the zoning board did not file any additional evidence in the record to confirm that the variance expired and was not renewed by the department of health. See, e.g., Pewitt v.Superintendent, Lorain Correctional Institution (1992), 64 Ohio St.3d 470,472; State, ex rel. Richard v. Wells (1992), 64 Ohio St.3d 76, 77;Miner v. Witt (1910), 82 Ohio St. 237 (new evidence added to the record to show an appeal is moot).
The judgment of the Lucas County Court of Common Pleas is reversed, and this case is remanded to that court with instructions that this case be remanded to the Sylvania Township Board of Zoning Appeals for a new hearing that affords appellants their due process rights and for any other proceedings that are in accordance with the law and are consistent with this decision. The zoning board is ordered to pay the court costs of this appeal.
 JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Peter M. Handwork, J.
JUDGE
 Melvin L. Resnick, J., Richard W. Knepper, P.J.
CONCUR.