DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Jackson County Common Pleas Court summary judgment in favor of the Village of Oak Hill (Oak Hill) and Oak Hill Mayor Robert Jones (Jones), defendants below and appellees herein.
 {¶ 2} Brent Cooper, plaintiff below and appellant herein, raises the following assignments of error for review and determination:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE[S] AS TO PLAINTIFF'S CLAIMS FOR TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP."
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES AS TO PLAINTIFF'S CLAIMS FOR DISABILITY DISCRIMINATION."
THIRD ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES AS TO APPELLANT'S CONSTITUTIONAL CLAIMS."
 {¶ 3} Appellant, who is legally blind, is the sole proprietor of Cooper Scrap and Salvage. He learned that the City of Jackson, in the process of building a new road, had bulldozed railroad tracks. The city owns the railroad and the Greater Miami Railroad manages it.
 {¶ 4} Appellant contacted Jackson City Service Director Ron Speakman about removing the rails. Speakman told appellant to talk to Fred Stout at the Greater Miami Railroad. Stout told appellant that he wanted that rail and additional rail located throughout the area removed. One location was in Oak Hill.
 {¶ 5} Appellant claims that he made an offer to Stout and that Stout stated, "fine. When do you want to start?" Appellant informed Stout that he would prepare a written contract. Before he had the opportunity to do so, however, Stout told appellant that he could not remove the rails because Jones did not want appellant working in Oak Hill.
 {¶ 6} Stout stated that he and appellant "had an understanding as to what the terms [of the contract] would be" and explained that he needed the City of Jackson to approve the contract. The city told him that he needed Oak Hill's approval as well. Stout stated that he heard that Jones did not want appellant to perform the work because appellant is a "liar" and a "cheat."
 {¶ 7} Appellant attended an Oak Hill council meeting and he stated that he wanted to remove the rail. Jones objected because of safety concerns over appellant's ability to perform the work and because he does not like the manner in which appellant operates. The council meeting minutes provide:
"Mayor again made it clear that concerning [appellant] removing railroad track, his main concern is safety. [Appellant] spoke of his concern for safety, but at the same time he drives cars and trailers on our streets with no operator's license, with no concern for our residents[`] safety and especially the children on the street. * * * Village has videos and pictures of [appellant's] mess at Dick Brown[`s] building when he was sorting garbage. Village had to pay for rat patrol, flies, etc. Also the mess he left on 279 West at Art Saylor[`]s property should give council an idea of what to expect."
 {¶ 8} Appellant claims that Jones would not allow appellant to perform the work and that he did not want appellant working in Oak Hill "because he didn't like me and that I was a `no good Cooper a liar, cheater, thief and crook.'"
 {¶ 9} On June 6, 2003, appellant filed a complaint against Jones, in his individual capacity and as Oak Hill mayor, and against the Greater Miami Railroad. Appellant alleged: (1) slander against Jones; (2) that Jones and Oak Hill interfered with his contract rights and violated his "constitutionally protected rights pursuant to Article 1, Section 1 and Article 2, Section 28 of the Ohio Constitution;" (3) that Jones and Oak Hill acted in a willful, wanton, and reckless manner; (4) that Jones intentionally inflicted emotional distress; (5) that Jones and Oak Hill "tortuously interfered" with his business; and (6) that Jones and Oak Hill unlawfully discriminated against him because of his blindness under R.C. 4112.02. Appellant's complaint also alleged breach of contract against the Greater Miami Railroad, but he subsequently dismissed that claim.
 {¶ 10} Jones and Oak Hill requested summary judgment and asserted that: (1) Jones' statements during the Oak Hill Village Council meeting are privileged and his other alleged statements are true or supported only by inadmissible hearsay; (2) the tortious interference with business claim must fail because Jones is entitled to a qualified privilege; (3) R.C. Chapter 4112 does not apply to appellant's claim, and even assuming that it does, appellant lacks evidence that any acts were taken because of his disability; (4) neither Article I, Section 1 nor Article II, Section 28 apply to appellant's claims; and (5) Jones and Oak Hill are entitled to immunity on all tort claims.
 {¶ 11} After reviewing the parties' submissions, the trial court granted appellees summary judgment.[1] The court determined that appellant did not have a contract with the railroad, that Jones made his statements in his official capacity, and that appellant failed to show that he had a business relationship or that appellees interfered with the relationship. The court wrote: "The Mayor, who had previous dealings with the Plaintiff, appears to have merely expressed concerns to the officials at the Greater Miami Railroad of the Village's previous contacts with the Plaintiff." The court concluded that Jones' comments were true and "would give rise to the Mayor's concern as the chief law enforcement officer of the Village of Oak Hill of the ability of [appellant] to safely perform the work inside the Village of Oak Hill." The court determined that because his acts were on behalf of the Village, privilege applies. The court further concluded that R.C. Chapter 4112 did not apply to appellant's case and that his constitutional claim lacked merit because appellees did not interfere with appellant's contract. This appeal followed.
 I {¶ 12} Initially, we note that when reviewing a summary judgment decision appellate courts conduct a de novo review. See, e.g., Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704,711, 622 N.E.2d 1153; Morehead v. Conley (1991),75 Ohio App.3d 409, 411-12, 599 N.E.2d 786. Thus, in determining whether a trial court properly granted summary judgment, an appellate court must review the Civ.R. 56 summary judgment standard, as well as the applicable law.
 {¶ 13} Civ.R. 56(C) provides in relevant part:
* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, a trial court may not grant summary judgment unless the evidentiary materials demonstrate that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g.,Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-30,674 N.E.2d 1164.
 {¶ 14} Under Civ.R. 56, the moving party bears the initial burden to inform the trial court of the motion's basis, and to identify those portions of the record that demonstrate the absence of a material fact. Vahila, supra; Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273. The moving party cannot discharge its initial burden under the rule with a conclusory assertion that the nonmoving party has no evidence to prove its case. See Kulch v. Structural Fibers, Inc. (1997),78 Ohio St.3d 134, 147, 677 N.E.2d 308, 318; Dresher, supra. Rather, the moving party must specifically refer to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); Dresher, supra.
 {¶ 15} "[U]nless a movant meets its initial burden of establishing that the nonmovant has either a complete lack of evidence or has an insufficient showing of evidence to establish the existence of an essential element of its case upon which the nonmovant will have the burden of proof at trial, a trial court shall not grant a summary judgment." Pennsylvania LumbermansIns. Corp. v. Landmark Elec., Inc. (1996), 110 Ohio App.3d 732,742, 675 N.E.2d 65. Once the moving party satisfies its burden, the nonmoving party bears a corresponding duty to set forth specific facts to show that a genuine issue exists for resolution. Civ.R. 56(E); Dresher, supra. A trial court may grant a properly supported summary judgment motion if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Id.; Jackson v. Alert Fire SafetyEquip., Inc. (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027.
 II {¶ 16} In his first assignment of error, appellant asserts that the trial court erroneously granted appellees summary judgment regarding his tortious interference with a business relationship claim. In particular, appellant argues that the court wrongly determined that a business relationship did not exist between him and the Greater Miami Railroad and that the court applied the wrong legal standard. He further argues that the qualified privilege defense does not apply because appellees acted with actual malice and the only reason the City of Jackson did not hire him to remove the line was because Jones did not want him "in his town due to the fact that [Jones] felt that [appellant] was a liar and a cheat."
 {¶ 17} Appellees contend that appellant's claim that he had a valid contract or an oral agreement is based upon inadmissible hearsay and that the only evidence to support his claim that a contract existed is appellant's own testimony.
 {¶ 18} The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into, or continue a business relation with, another, or not to perform a contract with another. See A B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. Constr.Trades Council (1995), 73 Ohio St.3d 1, 14, 651 N.E.2d 1283;Wavseon Plaza Limited Partnership v. Wavseon Hardware Company,
Fulton App. No. F-02-029, 2004-Ohio-1661. The elements of tortious interference with a business relationship are (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom.Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distrib. Co.,Inc. 148 Ohio App.3d 596, 774 N.E.2d 775, 2002-Ohio-3932. Tortious interference with business relationships includes intentional interference with prospective contractual relations not yet reduced to a contract. Id. Additionally, the interference must be intentional, not negligent. Id. See, also,Walter v. Murphy (1988), 61 Ohio App.3d 557, 573 N.E.2d 678
citing Juhasz v. Quik Shops, Inc. (1977), 55 Ohio App.2d 51,57, 379 N.E.2d 235.
 {¶ 19} "In order to recover for a claim of intentional interference with a contract, one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification and, (5) resulting damages." Kentyv. Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415,650 N.E.2d 863, paragraph two of the syllabus.
 {¶ 20} A defendant's interference with a contract is not actionable, however, when the defendant is vested with a privilege. A B-Abell Elevator Co., 73 Ohio St.3d at 14. InHahn v. Kotten (1975), 43 Ohio St.2d 237, 244, 331 N.E.2d 713, the Ohio Supreme Court discussed the qualified privilege defense as follows:
"`A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. This general idea has been otherwise expressed as follows: A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits.'"
Hahn, 43 Ohio St.2d at 245-246, quoting West v. PeoplesBanking Trust Co. (1967), 14 Ohio App.2d 69, 72,236 N.E.2d 679. "`All that is necessary to entitle such communications to be regarded as privileged is, that the relation of the parties should be such as to afford reasonable ground for supposing an innocent motive for giving information, and to deprive the act of an appearance of officious intermeddling with the affairs of others.'" Hahn, 43 Ohio St.2d at 246, quoting West,14 Ohio App.2d at 74 (internal quotation omitted).
 {¶ 21} Thus, a defendant may invoke the defense of qualified privilege and avoid liability by demonstrating that: (1) he acted in good faith, (2) there was an interest to be upheld; (3) the statement was limited in its scope to the purpose of upholding that interest; (4) the occasion was proper, and (5) the publication was made in a proper manner and only to the proper parties. Hahn, 43 Ohio St.2d at 246. "Where the circumstances of the occasion for the alleged defamatory communication are not in dispute, the determination of whether there is a qualified privilege is a question of law for the trial court." Temethy v.Huntington Bancshares, Inc., Cuyahoga App. No. 83291,2004-Ohio-1253, at ¶ 18 (citations omitted).
 {¶ 22} In the case at bar, we do not believe that appellees satisfied their Civ.R. 56 initial burden to show the absence of a material fact regarding appellant's tortious interference claim. The record contains some evidence, however scant, that appellant and the railroad established a business relationship. Appellant stated that he and the railroad reached an agreement. Stout also stated that he and appellant had an "understanding." We again note that tortious interference with business relationships involves intentional interference with prospective contractual relations not yet reduced to a contract. Diamond.
 {¶ 23} We reject appellees' claim that the only evidence to support the existence of a contract is inadmissible hearsay. Appellees have not specified what particular evidence is hearsay and their argument is too conclusory to satisfy the summary judgment standard.
 {¶ 24} At this juncture, and based upon the evidentiary materials as they currently exist, genuine issues of material fact remain regarding whether a business relationship did in fact exist.
 {¶ 25} Additionally, genuine issues of material fact may remain regarding the defense of qualified privilege. Jones may be entitled to a privilege to the extent that his comments referred to appellant's safety practices, or lack thereof. However, further comments that appellant is a "liar" and a "cheat" may arguably fall outside the qualified privilege defense. We again disagree with appellees' hearsay argument that has been raised in a conclusory fashion and does not satisfy their Civ.R. 56 burden. These matters may be more thoroughly addressed by the parties on remand.
 {¶ 26} Although not assigned as an error, we note that both parties briefly mention the applicability of R.C. Chapter 2744 political subdivision immunity. However, because the trial court did not address this issue, we will not consider it for the first time on appeal. See Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 360, 604 N.E.2d 138; Bentley v. Pendleton, Pike App. No. 03CA722, 2005-Ohio-3495 (declining to consider issues raised in cross-assignments of error when trial court had not addressed them); Bohl v. Travelers Ins. Group, Washington App. No. 03CA68, 2005-Ohio-963 (declining to consider issues raised in cross-assignments of error when trial court had not addressed them); Farley v. Chamberlain, Washington App. No. 03CA48,2004-Ohio-2771 (remanding matter to the trial court so that it, not appellate court, would first consider the issue). On remand, the parties may wish to argue, and the trial court may wish to consider and determine, whether R.C. Chapter 2744 applies to the case sub judice. See Sabulsky v. Trumbull Cty., Trumbull App. No. 2001-T-84, 2002-Ohio-7275; see, also, Farra v. Dayton
(1989), 62 Ohio App.3d 487, 576 N.E.2d 807.
 {¶ 27} Accordingly, based upon the foregoing reasons, we sustain appellant's first assignment of error.
 III {¶ 28} In his second assignment of error, appellant contends that the trial court improperly granted appellees summary judgment regarding the disability discrimination claim. He asserts that appellees discriminated against him because he is legally blind.
 {¶ 29} Appellees argue that R.C. Chapter 4112 does not apply to the case at bar because neither Jones nor Oak Hill would have been appellant's employer if he had received the work. We agree with appellees.
 {¶ 30} To establish a R.C. 4112.02(A) cause of action for disability discrimination, a plaintiff must demonstrate that: (1) he or she is disabled; (2) an employer took adverse employment action, at least in part, because the employee is disabled; and (3) the employee, though disabled, can safely and substantially perform the job's essential functions. See Hood v. DiamondProducts, Inc. (1996), 74 Ohio St.3d 298, 658 N.E.2d 738, paragraph one of the syllabus. An "employer" "includes the state, any political subdivision of the state, any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." R.C.4112.01(A)(2). An "employee" is "an individual employed by any employer." R.C. 4112.01(A)(3).
 {¶ 31} In the case at bar, no evidence exists that had appellant received the railroad work, either Oak Hill or Jones would have been his employer. No evidence exists that an employer-employee relationship existed between appellant and appellees, or would have existed between them if appellant had received the work. Thus, R.C. Chapter 4112 does not apply.
 {¶ 32} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 IV {¶ 33} In his third assignment of error, appellant asserts that the trial court erred by granting appellees summary judgment regarding his contract claim under Section 1, Article I of the Ohio Constitution.
 {¶ 34} Section 1, Article I of the Ohio Constitution provides that "[a]ll men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and seeking and obtaining happiness and safety." "The language of Section 1, Article I is a broad statement limiting the power of our state government to interfere with certain rights of individuals." State v. Williams (2000),88 Ohio St.3d 513, 521, 728 N.E.2d 342. In 1902, the Ohio Supreme Court held that Section 1, Article I protects the right to contract. SeeCleveland v. Clements Bros. Construction Co. (1902),67 Ohio St. 197, 65 N.E. 885; see, also, Joseph Bros. Co. v. Brown
(1979), 65 Ohio App.2d 43, 46, 415 N.E.2d 987.
 {¶ 35} More recently, however, the Ohio Supreme Court held that Section 1, Article I is not self-executing. Williams. The court explained:
"[T]he language in Section 1, Article I of the Ohio Constitution is not an independent source of self-executing protections. Rather, it is a statement of fundamental ideals upon which a limited government is created. But it requires other provisions of the Ohio Constitution or legislative definition to give it practical effect. This is so because its language lacks the completeness required to offer meaningful guidance for judicial enforcement."
Williams, 88 Ohio St.3d at 523. Thus, the court determined that "the standards for judicial enforcement of these rights [are] not in Section 1, Article I, but [are] in other provisions of the Ohio Constitution, laws passed by the General Assembly, and in the mandates of the United States Constitution. Id. at 524.
 {¶ 36} Consequently, because Section 1, Article I is not a self-executing right subject to judicial enforcement, appellant's cause of action based upon this constitutional provision must fail. Thus, the trial court appropriately granted summary judgment in appellees' favor regarding appellant's Ohio Constitution contract claim.
 {¶ 37} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.
 V {¶ 38} In sum we hereby reverse in part, and affirm in part the trial court's judgment and remand for further proceedings consistent with this opinion.
JUDGMENT REVERSED IN PART, AFFIRMED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed in part, affirmed in part and remanded for further proceedings. Appellant and appellees shall equally share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, P.J. Kline, J.: Concur in Judgment Opinion
[1] The trial court overruled appellee's motion for summary judgment with respect to appellant's slander claim against Mayor Jones.