{¶ 42} I respectfully dissent in part.
 I. {¶ 43} In regards to Appellants' fourth assignment of error and part of their first assignment of error, the trial court never addressed the issue of whether any of the Appellants have standing to bring an administrative appeal pursuant to R.C. 121.22(I), even though the parties briefed this issue in that court. As such, "because the trial court did not address this issue, we [should] not consider it for the first time on appeal." Cooper v. Jones, Jackson App. No. 05CA7,2006-Ohio-1770, at ¶ 26, citing Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356; Bentley v. Pendleton, Pike App. No. 03CA722, 2005-Ohio-3495
(declining to consider issues raised in cross-assignments of error when trial court had not addressed them); Bohl v. Travelers Ins. Group, Washington App. No. 03CA68, 2005-Ohio-963 (declining to consider issues raised in cross-assignments of error when trial court had not addressed them); Farley v. Chamberlain, Washington App. No. 03CA48, 2004-Ohio-2771
(remanding matter to the trial court so that it, not appellate court, would first consider the issue). Thus, I would remand this issue "to the trial court so that it first can consider and then rule on the issues. Failing to do so would mean that we would, in effect, be sitting as *Page 27 
the trial court rather than reviewing the trial court's decision."Bentley at ¶ 10, citing Bohl; Farley.
 {¶ 44} Accordingly, I would dissent as to the fourth assignment of error and part of the first assignment of error. I would concur in judgment only as to the remainder of the first assignment of error.
 II. {¶ 45} In their second assignment of error, Appellants assert that the trial court erred in finding that the ordinances did not directly affect them. Specifically, Appellants argue that the trial court erred in refusing to admit evidence that the loss of nearby green space would reduce the value of their property.
 {¶ 46} As this court has noted, the Supreme Court of Ohio, inSchomaeker, "did not limit the class of persons possessing standing to contiguous or adjacent property owners." Jenkins v. Gallipolis (1998),128 Ohio App.3d 376, 382, citing Willoughby Hills (1992),64 Ohio St.3d 24; Am. Aggregates Corp. v. Columbus (1990), 66 Ohio App.3d 318. Instead, "[t]he `directly affected' language in Schomaeker merely serves to clarify the basis upon which a private property owner, as distinguished from the public at large, [can] challenge the board or zoning appeals' [decision]." Id., citing Willoughby Hills at 27. As such, "a private property owner across *Page 28 
town, who seeks reversal of the granting of a variance because of its effect on the character of the city as a whole, would lack standing because his injury does not differ from that suffered by the community at large." Id.
 {¶ 47} When determining whether an appellant is among those directly affected by an administrative action, courts "must look beyond physical proximity to determine if the order constitutes a determination of the rights, duties, privileges, benefits or legal relationships of a specified person." Am. Aggregates Corp., 66 Ohio App.3d at 322; see, also, Jenkins, supra. "Generally, `concerns regarding increased traffic * * * are concerns shared equally by the public at large and, therefore, are not adequate grounds upon which to confer standing to bring an appeal pursuant to R.C. 2506.01.'" Jenkins, supra; citing WestgateShopping Village v. Toledo (1994), 93 Ohio App.3d 507. On the other hand, "evidence that the challenging party's property value may be reduced by a decision of the zoning board constitutes a direct effect sufficient to confer standing." Id.
 {¶ 48} Here, the majority agrees with the trial court's conclusion that loss of the green space was a loss shared by the community at large, as opposed to a unique harm to Appellants. I agree with that assessment, however, in my view, the loss of the green space itself is not the issue. The issue is whether the loss of the green space decreases the value of *Page 29 
Appellants' property, and whether that loss of value is a harm unique to Appellants, as opposed to the community at large.
 {¶ 49} As pointed out by this court in Jenkins, while an increase in traffic is a concern "shared equally by the public at large[,]" the decrease in value due to increased traffic "is precisely the sort [of unique harm] contemplated by the court in Westgate Shopping Village
[93 Ohio App.3d 507]." As such, the trial court's reasoning here is not persuasive. The diminution in property value that Appellants allegedly suffered as a result of the loss of green space may be a "unique harm," and the trial court, in my view, erred by failing to admit and consider such evidence when considering the limited issue of standing. Whether Appellants will ultimately prevail is a separate issue not before the court at this time.
 {¶ 50} Further, the majority finds that because the "green space" is private land owned by OU, as opposed to "public property dedicated for recreational purposes for use by the community at large, is of great importance." I believe that the characterization of the land as private, as opposed to public, is irrelevant for the limited purpose of determining whether Appellants have standing. The question is whether the Appellants are directly affected and suffer unique harm as a result of the administrative acts. *Page 30 
 {¶ 51} The case of Schomaeker concerned an administrative act that allowed a bank to construct a parking lot on private property it owned in a residential zone. The Supreme Court of Ohio held that a contiguous property owner "had standing to bring a direct appeal pursuant to R.C. Chapter 2506 * * * since the property owner was a person `directly affected' by the order of the planning commission." Willoughby,64 Ohio St.3d at 27, citing Schomaeker at 310, 312. Whether or not the bank's land was private verses public property over which the contiguous property owner had no right of use was not a factor expressly considered by the court.
 {¶ 52} In Anderson v. Vandalia, 159 Ohio App.3d 508, 2005-Ohio-118, the Second District Court of Appeals held that a property owner had standing to appeal an administrative decision granting a conditional use permit to the American Legion so that the Legion could expand its facilities on land owned by the Legion. Despite the fact that the land in question was privately owned by the Legion, the adjacent property owner had standing to pursue an administrative appeal. Id. at ¶¶ 22-24. Again, whether the Legion's land was private verses public property over which a neighboring property owner had no right of use was not a factor expressly considered by the court.
 {¶ 53} Therefore, I disagree with the majority. I would find that the *Page 31 
trial court erred in excluding and refusing to consider evidence concerning whether Appellants' property values would diminish as a result of the ordinances of the alleged loss of the nearby green space. I would reverse and remand for further proceedings for a determination of whether the appellants who actively participated in the administrative proceedings are directly affected by the ordinances.
 {¶ 54} Accordingly, I dissent as to the second assignment of error.
 III. A. {¶ 55} Appellants, in their third assignment of error, assert that "the trial court's failure to consider the `green space' issue, as well as the trial court's failure to properly apply Jenkins I to this matter constitutes reversible error." In this case, there was some evidence presented that would show that turning the alleged green space into the retirement community would adversely affect the property value of Fahl and Stokes. However, the trial court tried to eliminate all such evidence and certainly did not consider it when making its determination regarding standing. Thus, as set forth above, the trial court erred in failing to consider evidence on the impact the alleged elimination of green space would have on their property values when determining whether Fahl and Stokes have standing in an administrative *Page 32 
appeal.
 {¶ 56} Accordingly, I would dissent in part on this issue as to the third assignment of error.
 B. {¶ 57} Appellants further assert in their third assignment of error that the trial court erred when it found that the market value of tenant-occupied homes is higher than that of owner-occupied homes. The trial court found that the testimony of Appellants' expert, Brian Mocilnikar, was not credible because "[h]e had not appraised property in Athens City previously and did not realize that generally the value of rental property exceeds that of owner-owned residences." The testimony upon which the court apparently relies upon in attacking Moclnikar's testimony is that elicited on cross-examination of Moclnikar.
 {¶ 58} During direct, Moclnikar testified that, generally, the market value of owner-occupied single-family homes is higher than that of tenant-occupied single-family homes. On cross-examination, Moclnikar was asked to assume that Athens, because it is a college town, had a high number of tenant-occupied single-family homes, and that those properties, in Athens, sold at a value of two to three times that of owner-occupied single-family homes. Upon assuming that fact, Moclnikar was asked that, assuming such *Page 33 
to be true, whether that fact would change his opinion. Moclnikar testified that it would. However, such an assumption was never proven with facts during trial. However, the trial court relied upon that testimony in discrediting Moclnikar's testimony.
 {¶ 59} Therefore, I agree that the trial court's reliance on this factor in discrediting Moclnikar's testimony was improper. However, this was not the sole factor considered by the court in discrediting Moclnikar's testimony. Further, Appellees presented evidence in opposition to Moclnikar's general testimony, upon which the trial court, as the finder of fact, was free to rely. As such, Appellants were not prejudiced by such error.
 {¶ 60} Accordingly, I concur in judgment only for this part of the third assignment of error. *Page 1