PUCKETT et al., Appellants,

v.

SCIOTO TOWNSHIP BOARD OF ZONING APPEALS, Appellee.

[Cite as *Puckett v. Scioto Twp. Bd. of Zoning Appeals,*
163 Ohio App.3d 535, 2005-Ohio-5430.]

Court of Appeals of Ohio,
Fourth District, Pickaway County.

No. 05CA20.

Decided Sept. 28, 2005.

Margulis, Gussler, Hall & Hosterman, and Leo J. Hall, for appellants.

William L. Archer Jr., Assistant Pickaway County Prosecuting Attorney, for appellant.

ABELE, Presiding Judge.

{¶ 1} This is an appeal from a Pickaway County Common Pleas Court judgment that affirmed a Scioto Township Board of Zoning Appeals decision. The board denied an application for a conditional use permit made by Robert Puckett and Berna Puckett, plaintiffs below and appellants herein.

{¶ 2} Appellants assign the following error for review and determination:

The trial court erred in failing to find the administrative order denying the variance to be arbitrary, capricious and unreasonable.

{¶ 3} Appellants own ten acres of land in Scioto Township.[1] The property is zoned "R–1 Rural Residential District" and is described as "single family residential development reflecting very low density and a rural but non-farm lifestyle." The Scioto Township Zoning Resolution does provide for conditional uses beyond designated permitted uses, but the only conditional uses that are permitted in R–1 districts are "[p]ublic parks and nature preserves."

---

1. For the most part, we take our facts from the parties' February 28, 2005 "Agreed Stipulation of Record on Appeal."

{¶ 4} Appellants wish to supplement their retirement income with a "pay lake" on their property.[2] To meet that objective, appellants applied for a conditional-use permit. At the public hearing 11 witnesses testified, and evidence was introduced concerning similar pay lakes in other Ohio counties. Subsequently, the board denied appellants' application for, inter alia, the following reasons:

Conditional Uses permitted within the R–1 Rural Residential District are limited to public parks and nature preserves. The commercial nature of the pay pond business as proposed would not meet the generally accepted definition of Public Park or nature preserve. Therefore, it does not meet the requirements for conditional use as defined by the Zoning Resolution for Scioto Township, Pickaway County, Ohio.

{¶ 5} Appellants commenced the instant action as an R.C. Chapter 2506 administrative appeal from that decision. The gist of appellants' argument was that the board erroneously ruled that their proposed pay lake was not a public park and within the conditional uses allowed for the property. After a hearing, the trial court affirmed the board's denial of the conditional use permit.[3] The court agreed with the board that the pay lake appellants propose is not a public park. This appeal followed.

{¶ 6} Appellants assert in their assignment of error that the trial court erred by not finding that the denial of their application for conditional use was arbitrary and capricious. They maintain that the phrase "public park" as used in the Township Zoning Resolution must be construed in their favor and should encompass the pay lake that they wish to operate on their property.

{¶ 7} Our analysis begins with a discussion of the standards of review applicable in this case. R.C. 2506.01 states, "Every final order, adjudication, or decision of any * * * division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located." The standard of review to be employed by the common pleas courts is set out in R.C. 2506.04 as follows:

The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision

---

**2.** A "pay lake" is described as a fishing pond where, for a fee, the public may fish a stocked pond.

**3.** We find no transcript of that hearing in the record before us.

consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code.

{¶ 8} The role of appellate courts in R.C. Chapter 2506 appeals is much more limited than that of trial courts. For example, appellate courts do not have the same power to weigh the evidence. Instead, appellate courts are restricted to reviewing questions of law and determining whether a trial court abused its discretion in applying that law. See *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848, at fn. 4; see, also, *Jenkins v. Gallipolis* (1998), 128 Ohio App.3d 376, 381, 715 N.E.2d 196; *Prokos v. Athens Bd. of Zoning Appeals* (Jul. 13, 1995), Athens App. No. 94CA1638, 1995 WL 416947. With these principles in mind, we turn our attention to the zoning regulations at issue in the case sub judice.

{¶ 9} This case hinges, as the parties aptly note, on the definition of the term "public park." This phrase is not defined in Scioto Township's Zoning Resolution. When words or phrases are not defined in that document, the resolution requires an interpretation using "their customarily understood meaning." See Scioto Township Zoning Resolution Section 2.01. We believe that a commonsense definition exists for the term "public park," and this definition excludes private commercial enterprises such as the one appellants propose.

{¶ 10} The American Heritage Dictionary (2nd Ed.1985) 1001 defines the word "public" to mean something that is "[m]aintained for or used by the people or community" as in a *"public park,"* (emphasis sic) or "[c]onnected with or acting on behalf of the *people, community, or government rather than private matters or interest."* (Emphasis added.) That same dictionary also defines "park" as "[a] tract of land set aside for public use." Id. at 903. Similarly, Black's Law Dictionary (5th Ed.1979) 1104, defines "public" as "[p]ertaining to a state, nation or whole community; proceeding from, relating to, or affecting the whole body of people or an entire community. * * * *Belonging to the people at large."* (Emphasis added). That same dictionary defines "public place" as a "place to which the general public has a right to resort"; a "place which is in point of fact public rather than private." Id. at 1107.

{¶ 11} The foregoing definitions indicate a general consensus that "public" lands used as "parks" are generally owned by the government (federal, state, or local), are open to the public for the benefit of the public, and are not private for-profit concerns. The "pay lake" that appellants propose meets none of these criteria. The land (1) is not publicly owned, but is private; (2) is not open to the general public, but only to those willing to pay a fee to fish; and (3) will not be used to benefit the public, but, rather, will be a for-profit enterprise to benefit

appellants. For these reasons, we agree with both the board and the trial court that the proposed pay lake is not a public park as envisioned in the permitted conditional use language.

{¶ 12} Appellants counter that "[m]any public parks, both privately and governmentally owned, require user fees." We are not persuaded. First, the concept of a "privately owned" "public park" seems to be a non-sequitur. Appellants do not cite examples of privately owned, for-profit, "public parks" and we are not aware of any. Second, the admission price that appellants intend to charge customers is not analogous to a user fee. Although there does not appear to be any evidence in the record to explain the purpose of user fees at public parks, we recognize that that type of fee is generally charged solely for the purpose of maintaining parks and their facilities. By contrast, in the instant case appellants stipulated that they hope to make a profit that will supplement their retirement income. We agree with the trial court's view, however, that public parks are not for-profit commercial enterprises owned by private individuals for the financial benefit of those individuals. A privately owned for-profit enterprise that is open to the public for a fee should not be equated to a public park.

{¶ 13} Our holding is buttressed by a similar case from the Ninth District. In *Sabol v. Black* (Jan. 14, 1976), Lorain App. No. 2337, 1976 WL 188658, the court held that a turkey shoot operated on private land was, manifestly, not a public park for purposes of local zoning regulations. Appellants argue that *Sabol* is inapposite, however, because the land owners in that case engaged in other commercial activities as well, including excavation, grading, and dismantling junk cars. Our review of the opinion, however, reveals that the *Sabol* court considered the turkey shoot separate from the other activities (the second assignment of error is devoted solely to that issue) and concluded that the turkey shoot activity is *"manifestly* not a public park." (Emphasis added.) Id.

{¶ 14} Appellants cite *Saunders v. Clark Cty. Zoning Dept.* (1981), 66 Ohio St.2d 259, 261, 20 O.O.3d 244, 421 N.E.2d 152, for the principle that zoning resolutions are in derogation of the common-law right to use one's property as one sees fit and, thus, should be strictly construed in favor of property owners. We do not dispute this statement as an abstract proposition of law. By the same token, however, zoning resolutions should not be construed to reach absurd results or results outside the purview of the regulation. While admittedly the phrase "public park" may not lend itself to a precise definition, it does not encompass a private, for-profit enterprise operated for the benefit of the owners, rather than for the public's benefit.

{¶ 15} We additionally note that appellants provide no feasible test or workable standard to distinguish their pay lake from other commercial enterprises that residents in their R–1 Rural Residential District might want to operate. If we

required the board to allow a pay lake, why not allow a golf course, a racquet club, an amusement park, a game-hunting preserve, a raceway, or virtually any outdoor commercial enterprise that provides a service and amusement to the general public for a fee? In other words, appellants provide no guidance as to how the board could permit them to operate a pay lake but then deny a conditional use permit for such other enterprises. Carried to its conclusion, appellants' argument would allow almost any commercial enterprise to operate within the R–1 district.

{¶ 16} We fully understand and appreciate appellants' wish and proposal to use their property in a matter that they desire, especially in a serene and relatively quiet manner. Appellants' view of the regulation, however, represents a wholesale abandonment of the regulation, rather than simply a strict construction of the regulation in appellants' favor. This regulation limits the potential uses for the land and is intended to benefit all of the landowners who own property in that particular "R–1 Rural Residential District."

{¶ 17} Accordingly, based upon the foregoing reasons we hereby overrule appellants' assignment of error and affirm the trial court's judgment.

Judgment affirmed.

KLINE and McFARLAND, JJ., concur.