DECISION AND JUDGMENT ENTRY
{¶ 1} PM Leasing, LLC ("Appellant") appeals the judgment of the Pickaway County Court of Common Pleas denying Variance #22-04, in which Appellant requested a drive-thru window for its business location at 513 East Main Street, Circleville, Ohio. Appellant contends that the original denial of the request, issued by the City of Circleville Planning and Zoning Commission ("Commission"), was an unreasonable, arbitrary interference with its private property rights, and that the Pickaway County Court of Common Pleas should have reversed the Commission's decision. Because we find that Appellant forfeited the possibility of a drive-thru window for his facility in order to speed the resolution of several set-back issues, we affirm the judgment of the Pickaway County Court of Common Pleas.
 {¶ 2} Appellant purchased real estate at the corner of East Main Street and Mingo Street in the City of Circleville upon which was situated a building previously used as a gasoline station. This property is located in an area designated as the General Business District under the Zoning Ordinance of the City of Circleville.
 {¶ 3} On April 12, 2002, Appellant filed an application for zoning variances on this lot to vary the rear yard set-back from 50' to 15'; the side yard set-back from 50' to 36' 3"; the front yard set-back on Mingo Street from 40' to 15.5' and the pavement set-back from 35' to 0', all for the purpose of opening a Domino's Pizza shop with a drive-thru window. Under the plan submitted by Appellant, a new 2,115 square foot structure would be added on the east side of the existing building to be used for business rental purposes. The drive-thru window was to be located on the west side of the building with traffic to travel along a 15' strip behind the building and then exit out on to Mingo Street. Traffic would therefore not have to use the alley located to the rear of the property as a primary means of egress. After discussion by the Commission these variances were approved at the Planning and Zoning meeting of May 1, 2002; a further variance request, however, was tabled until the next meeting.
 {¶ 4} At the June 5, 2002 meeting of the Commission, Mr. McNeill, a representative of the Appellant, brought up for the first time his new plan to construct a larger facility on this lot to house a Blockbuster video store. This plan called for a larger lot which included tearing down a house to the south of the existing lot and constructing a new 5,025 square foot building on the east end instead of the originally proposed 2,115 square foot structure. Because of the additional square footage of this new building to the south of the property, the original plan to divert traffic from the drive-thru across the 15' strip behind the building to Mingo Street would be eliminated, thereby forcing traffic from the drive-thru across the alley and out onto Mingo Street. Because of the concerns addressed by the Commission about using the alley as the only means of egress from the business and his belief that the Commission would not approve his variance request on account of these concerns, Mr. McNeill proposed to eliminate his drive-thru window. Specifically, the transcript of the hearing provides:
Mr. McFarland [Director of Public Service] stated with the square footage that he needs, the only place he can go is the alley. He could make the alley work as his driveway.[1]
Mr. Wunsch [Commissioner] stated I think that is what this is here.
Mr. McFarland stated with the parking and square footage he wants, if he doesn't have any off-street it's got to be that to have his drive-thru window.
Mr. McNeill stated for conversation purposes, let's kill the drive-thru window. What happens then?
Mr. McFarland stated that if you kill the drive-thru window, then you can move this building around where we can get this curb cut where we need it for traffic circulation.
Mr. McNeill asks and still keep the parking, is that a problem?
Mr. McFarland stated if we can ship this building this way and put it right up where this building would be in line with the Short Stop, it would be 15' between them. That would open all of this area up here by 42' which would allow you to get a curb cut down here which would be a safe distance from the intersection. The problem with that is there goes your drive-thru window.
Mr. McNeill stated the only positive that I can see to that is the notion that Blockbuster is on site, the value of that window is definitely diminishing because they have to get out of their vehicle anyways to get into Blockbuster. This is definitely helping me, but it's less on that site plan than it is on the other.
Mr. McFarland asked with Blockbuster?
Mr. McNeill stated sure because they have to get out of the vehicle and go into Blockbuster. (Sic).
 {¶ 5} After further discussion, the Commission tabled the matter until the next meeting. On August 7, 2002, the matter was back before the Commission to discuss proposed changes to the variances already approved at the May 1, 2002 meeting. Much discussion took place during this meeting about potential traffic flow problems, which included references to the drive-thru window. After several concerns were addressed by the Commission and by neighbors about what could be done to assist the traffic flow problem, the Commission chairman, Mr. Mosher, stated that because of these issues, the Commission would probably table the matter again until these concerns could be addressed and suggestions given for a solution. At this point, Mr. McNeill made the following statement:
"I would propose to take the pick-up window out of theequation. I need a decision. If it is that big of a problem, theneliminate the window." (Emphasis added).
 {¶ 6} After further discussion by the Commission, the variances requested by the Appellant were approved subject to the condition that no drive-thru window would be included for the business. The Commission's decision was not appealed. Appellant subsequently constructed the proposed facility with a drive-thru, but also installed required bumper barriers along the west and south sides of the property so as to prevent vehicles access to the alley to the rear of the building.
 {¶ 7} In August 2004, Appellant again approached the city about opening its Domino's Pizza business with a drive-thru to be used in connection with the operation of the establishment. Correspondence was sent between Appellant's attorney and the City Service Director, wherein Appellant contended that since a drive-thru window is a permitted use in the General Business District pursuant to Section 21.02(I) of the Circleville Zoning Ordinance, no variance was needed, although the alley would be used as the primary egress from the property. Thereafter, Appellant violated the conditions of the previously granted variances by removing the bumper blocks on the west and south sides of the property, thereby permitting traffic to flow into the alley system to the south of the lot. After the Commission forwarded a notice of violation to Appellant, Appellant filed another application for a variance, dated October 5, 2004. This application specifically requested the approval of a drive-thru window to be used in connection with the Domino's Pizza business.
 {¶ 8} At the Commission meeting held November 3, 2004, the Commission, as well as several neighborhood residents, addressed concerns about the proposed drive-thru window, particularly over the increased traffic flow through the alley south of the property. During this meeting, several members of the Commission also expressed the opinion that Appellant had already voluntarily given up the right to operate a drive-thru window as part of its business in consideration for the Commission granting the set-back variances when the building construction was originally approved. The issue was ultimately tabled until the December 2004 meeting. At the December 2004 meeting, the request was again tabled.
 {¶ 9} On February 2, 2005, Appellant again met with the Commission to discuss the variance request regarding the drive-thru window. At this meeting, Commission members stated that traffic flow concerns had been analyzed in the period since the last meeting, but none of the options that were proposed provided a solution to the large amount of traffic that would flow into the residential area if the variance was approved. Ultimately, the Commission concluded that because Appellant's representative had the opportunity to have the drive-thru included with its plans, but instead made the choice to build a larger building on the lot, Appellant voluntarily forfeited its ability to include the drive-thru window for the Domino's Pizza business. As a result, Appellant's application for the variance was unanimously denied.
 {¶ 10} Appellant appealed the Commission's decision to the Pickaway County Court of Common Pleas. On June 17, 2005, that court affirmed the Commission's decision, indicating that Appellant had knowingly forfeited its right to install a pick-up window in order to speed Commission approval of the substantial set-back changes that were also at issue.
 {¶ 11} Appellant now appeals the decision of the Pickaway County Court of Common Pleas, advancing four assignments of error:
 {¶ 12} "I. THE PLANNING AND ZONING COMMISSION'S DENIAL OF THE APPELLANT'S REQUEST FOR A DRIVE THROUGH WINDOW WAS UNREASONABLE AND AN ARBITRARY INTERFERENCE WITH THE RIGHTS OF PRIVATE PROPERTY GUARANTEED BY SECTIONS 1 AND 19, ARTICLE I OF THE OHIO CONSTITUTION, AND SECTION I OF THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION AND SHOULD NOT HAVE BEEN UPHELD BY THE TRIAL COURT."
 {¶ 13} "II. THE DENIAL OF A DRIVE THROUGH WINDOW IN A ZONING DISTRICT WHICH PERMITS A DRIVE THROUGH WINDOW ON THE BASIS THAT THE AFFECTED NEIGHBORHOOD OBJECTS IS NOT A SOUND BASIS FOR THE DENIAL AND SHOULD NOT BE UPHELD ON APPEAL."
 {¶ 14} "III. THE DECISION OF THE PLANNING AND ZONING COMMISSION DENYING APPELLANT THE USE OF A DRIVE THROUGH WINDOW WAS IMPROPER IN THAT IT CONSTITUTED A LEGISLATIVE FUNCTION RATHER THAN AN ADMINISTRATIVE FUNCTION AND THAT DECISION SHOULD NOT HAVE BEEN UPHELD BY THE TRIAL COURT."
 {¶ 15} "IV. THE TRIAL COURT DID NOT ADDRESS ANY OF THE APPELLANT'S ARGUMENTS ON APPEAL AND DECIDED THE CASE ON AN INAPPROPRIATE BASIS."
 {¶ 16} This case constitutes an administrative appeal of a zoning commission decision under Section 2506.01 of the Ohio Revised Code. In an appeal under R.C. Chapter 2506 from the denial of an application for a variance by a Zoning Board of Appeals, there is a presumption that the board's determination is valid, and the burden of showing invalidity of the board's determination rests on the party contesting that determination.C. Miller Chevrolet, Inc. v. Willoughby Hills (1974),38 Ohio St.2d 298, 303, 313 N.E.2d 400.
 {¶ 17} The scope of review by the trial court is set forth in R.C. 2506.04, which requires the court to examine the "substantial, reliable and probative evidence on the whole record." Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34,465 N.E.2d 848. A court of common pleas should not substitute its judgment for that of an administrative board, such as a board of zoning appeals or a zoning commission, unless the court finds that there is not a preponderance of reliable, probative, and substantial evidence to support the board's decision. Id.
 {¶ 18} An appeal to a court of appeals, pursuant to R.C.2506.04, however, is more limited in scope than an appeal to a court of common pleas. Appellate courts are restricted to reviewing questions of law and determining whether a trial court abused its discretion in applying that law. Puckett v. SciotoTownship Board of Zoning Appeals (Sept. 28, 2005), Pickaway App. No. 05CA20, 2005-Ohio-5430 at ¶ 8. R.C. 2506.04 requires an appellate court to affirm the common pleas court, unless we find, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence. Kisil, 12 Ohio St.3d at 34; see, also,Budd Co. v. Mercer (1984), 14 Ohio App.3d 269, 274,471 N.E.2d 151.
 {¶ 19} We will address assignments of error I through IV together. A review of the discussions that transpired between Mr. McNeill and various Commission members at the Commission meeting on August 7, 2002 strongly indicates that Mr. McNeill forfeited the ability to have and use a pick-up window on the property. The minutes of the Commission meeting show that "Mr. McNeill stated [`]I would propose to take the pick-up window out of the equation. I need a decision. If it is that big of a problem then eliminate the window.[']" These words show knowledge on the part of Mr. McNeill that he had forfeited the pick-up window in exchange for a quick decision on the other issues involved.
 {¶ 20} In light of the fact that Mr. McNeill voluntarily forfeited the pick-up window in order to facilitate a quick resolution of the other issues discussed by the Commission, we find Appellant's assignments of error without merit. Because the decision of the trial court is supported by a preponderance of reliable, probative and substantial evidence, we affirm its judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment Only.
Kline, J.: Concurs in Judgment and Opinion.
[1] For the record, Judge McFarland, to his knowledge, is not related to the Director of Public Safety and has no recollection ever meeting this individual.