LAWSON, Appellee,

v.

FOSTER, Admr., Appellant.

[Cite as *Lawson v. Foster* (1992), 76 Ohio App.3d 784.]

Court of Appeals of Ohio,
Montgomery County.

No. 12939.

Decided Jan. 14, 1992.

*Alan J. Statman,* for appellee.

*Lee C. Falke,* Montgomery County Prosecuting Attorney, and *Michael Russell,* Assistant Prosecuting Attorney, for appellant.

WOLFF, Judge.

Appellant, James A. Foster, the Planning and Zoning Administrator for Miami Township, Ohio, appeals from the judgment of the Montgomery County Court of Common Pleas which reversed a decision of the Miami Township Board of Zoning Appeals ("BZA") rendered in Foster's favor.

This appeal stems from a dispute over whether Leslie G. Lawson's mulching operation, conducted on his property at 5619 Shepard Road, was permissible as a conditional use in an agricultural district. The BZA determined that it was not. The common pleas court reversed that decision.

Lawson's property is located in Miami Township in an area zoned as an "A" agricultural district. Article 8 of the Miami Township Zoning Ordinances sets out the uses which are considered agricultural. Section 801 lists the principal permitted agriculture uses. Section 802 lists the authorized accessory uses.

Section 803 lists conditional uses. Of particular relevance herein is Section 803(K), which authorizes any use which constitutes an "agricultural service." An agricultural service is defined as "commercial activity that *primarily* serves the farming community." (Emphasis added.) Section 803(K) contains a nonexhaustive list of the types of activity which are considered to be agricultural services. In order to qualify for a conditional use permit under Section 803(K), the BZA must determine that the proposed conditional use is both "needed and appropriate." Mulching is not expressly included anywhere in Article 8 as an authorized principal, accessory, or conditional use.

On July 24, 1990, Lawson received notice by letter from Richard L. Walton, the Miami Township Zoning Inspector, that his mulching operation violated Section 802, Article 8, and Sections 208.01(D) and (F), Article 2 of the Miami Township Zoning Ordinances. The inspector found that Lawson maintained a mulch distribution business at his residence and that mulching was not an "accessory use" as that term was defined in Article 8 of the zoning ordinances.

On August 7, 1990, Lawson filed an application with the BZA, seeking an administrative review of the inspector's decision. On August 17, 1990, Lawson filed a conditional use application with the BZA, seeking permission to conduct the mulching operation as an "agricultural service" in accordance with Section 803(K), Article 8.

The BZA addressed both applications (case Nos. 362–90 and 363–90, respectively) in a hearing on October 1, 1990, considering first the appeal from the inspector's ruling that the mulching operation was not a Section 802, Article 8 accessory use.

The BZA unanimously upheld the inspector's decision, finding that Lawson's mulching operation did not qualify as an appropriate accessory use for an "A" agricultural district. The BZA upheld the inspector's decision on the grounds that the mulch was not grown on Lawson's land, in that Lawson bought tree bark from a commercial sawmill and simply processed it on his property into a finer form of mulch.

The BZA then considered Lawson's application for a conditional use permit. All of the evidence pertaining to the appeal from the inspector's decision was incorporated by reference into the proceedings pertaining to the conditional use application. A letter addressed to Foster from Joseph Klosterman, a staff planner with the Montgomery County Planning Commission ("MCPC"), was admitted into evidence at the second stage of the proceedings. The letter recommended denial of the conditional use application because the "recycling of tree bark into mulch and storage of the mulch" was not considered an agricultural service. The letter informed Foster that " * * * farmers do not

normally use shredded tree limbs and bark mulch in their farming operation. This product is typically used in the urban area by commercial landscape companies and homeowners. Therefore, the recycling of tree bark into mulch and the storage of the mulch should be located in an area that is zoned for outdoor business activity such as the B–4 district."

Section 803(K), Article 8 requires all applicants to submit such a recommendation from the MCPC with their conditional use application. Although not bound by the recommendation, the BZA was required to consider this recommendation before rendering a decision on the conditional use application.

The BZA unanimously denied the conditional use application, specifically finding that mulch production did not primarily serve the agricultural or farming community. This finding was based in part on the letter from the MCPC.

Lawson appealed both decisions to the Montgomery County Court of Common Pleas. The trial court reversed the BZA on the grounds that the weight of the evidence supported a finding that mulching was an "agricultural service" within the definition of Section 803(K), Article 8 of the Miami Township Zoning Ordinances. The trial court thus concluded that the BZA's denial of the conditional use application was "unreasonable and contrary to the preponderance of the evidence." The trial court apparently did not address Lawson's appeal from the BZA's affirmance of the zoning inspector's decision that the mulching operation was not an accessory use in that the court's decision and judgment focused solely on the Section 803(K), Article 8 argument. The trial court may have determined that its determination as to the conditional use application rendered the accessory use issue moot. Foster appeals from this judgment advancing two assignments of error:

"First Assignment of Error

"The trial court erred in reversing the Miami Township Zoning Board of Appeals' decision as the issue before the board was a debatable question or fairly debatable, and the court should not substitute its decision for the legislative body which created the ordinance."

Appellant conceded at oral argument that this assignment of error was without merit because the "fairly debatable" standard applies only when the validity of a municipal ordinance has been challenged on constitutional grounds. No such challenge was issued against the Miami Township Zoning Ordinances. Accordingly, the first assignment is overruled.

"Second Assignment of Error

"The trial court erred in reversing the Miami Township Zoning Board of Appeals' decision as under the circumstances and facts presented to the board

by plaintiff-appellant-appellee ('appellee'), the decision of the board was clearly reasonable."

■ This assignment implicates the scope of judicial review by a court of common pleas in an R.C. Chapter 2506 administrative appeal. Foster argues that since the BZA's denial of the conditional use application was reasonable and supported by the evidence, the trial court erred in reversing the BZA's decision. We agree.

The only evidence before the trial court consisted of that which had been considered by the BZA. No additional evidence was presented to the trial court pursuant to R.C. 2506.03.

In a case wherein the evidence before the trial court was limited to that which had been before the administrative agency, Judge, now Justice, Douglas summarized the parameters of the trial court's, and the appellate court's, review function:

"It must also be remembered that the appeal in the common pleas court was an appeal from an administrative agency and, as such, was governed by R.C. Chapter 2506. See *Schoell v. Sheboy* (1973), 34 Ohio App.2d 168, 171–172 [63 O.O.2d 285, 286–287, 296 N.E.2d 842, 845]. Specifically, the common pleas court is confined to the transcript compiled during the agency's proceedings (R.C. 2506.03, 2506.02), unless one of the conditions specified in the statute appears on the face of the transcript or by affidavit. R.C. 2506.03(A) and (B). See *Dvorak v. Municipal Civil Service Comm.* (1976), 46 Ohio St.2d 99 [75 O.O.2d 165, 346 N.E.2d 157]; *Grant v. Washington Twp.* (1963), 1 Ohio App.2d 84, 86 [30 O.O.2d 108, 109, 203 N.E.2d 859, 861]. When reviewing the decision of an administrative agency, the common pleas court, based on the entire record, may find that the agency's order, adjudication or decision is 'unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence * * *.' R.C. 2506.04. In undertaking this hybrid form of review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111 [17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267], and the court may not, especially in areas of administrative expertise, blatantly substitute its judgment for that of the agency. *Dudukovich v. Housing Auth.* (1979), 58 Ohio St.2d 202, 207 [12 O.O.3d 198, 201, 389 N.E.2d 1113, 1117].

"* * *

"The key term in R.C. 2506.04 is 'preponderance.' *Dudukovich, supra*, at 207 [12 O.O.3d at 201, 389 N.E.2d at 1117]. 'If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must

affirm the agency decision.' *Id.* In determining whether the common pleas court properly applied the standard of review set forth in R.C. 2506.04, this court has a limited function. This court's determination is limited to the question of whether, as a matter of law, a preponderance of reliable, probative and substantial evidence exists to support the decision of the board. See *Dudukovich, supra,* at 208 [12 O.O.3d at 202, 389 N.E.2d at 1117]. Accordingly, upon our review of the record in each appellant's case, it is our determination that, as a matter of law, a preponderance of reliable, probative and substantial evidence exists in the transcript of the board's proceedings. The common pleas court, therefore, should have affirmed the decision of the board. On this basis alone, the judgment of the common pleas court must be reversed." *Budd Co. v. Mercer* (1984), 14 Ohio App.3d 269, at 273–274, 14 OBR 298, at 303, 471 N.E.2d 151, at 156.

 In this case, the BZA predicated its denial of the conditional use application on Section 803(K), Article 8, which provides a nonexhaustive list of services that may qualify as conditional uses, and which states as follows:

"Agricultural Services (commercial activity that primarily serves the farming community) including but not limited to, tractor and farm implement sales, welding shops, grain elevators, doctor and dentist offices, saw sharpening, farming machinery and repair including automobiles and trucks, and grocery stores (where the Board of Zoning Appeals determines that such uses are needed and appropriate). All requests for agricultural services must have the recommendation of the Montgomery County Planning Commission. This recommendation shall be considered by the Board when making their decision."

There was very little additional evidence presented at the conditional use application phase of the hearing. All of the evidence presented during the appeal from the zoning inspector's decision that the mulching operation was not an accessory use was also relevant to the determination of whether the mulching operation primarily served the farming community, and was necessary and appropriate.

The following evidence was offered during the appeal phase of the proceedings.

James Foster, in his capacity as the Miami Township Planning and Zoning Administrator, testified that Lawson's mulching operation was more appropriate to one of the business districts, specifically the B–4 business district, which permitted outdoor business activities. According to Foster, mulch served almost no agricultural purpose.

Other witnesses, all of whom lived in close proximity to Lawson, testified in opposition to Lawson's use of his property for such an enterprise. Matthew Hermetz stated that those living around Lawson's property had always opposed any business coming into the district. Hermetz was opposed to Lawson's business because he was afraid that as soon as one business was established in the district, the entire district would become commercial.

Jay Roof also objected to the conditional use. He claimed that the product being manufactured was not agricultural in nature, in part because the bark was not taken from trees located on Lawson's property. He also claimed that the trucks used to transport the mulch were extremely large tandem-axle trucks, which were dangerous on the rural road where he and Lawson lived.

Ted Applegate, Lawson's next-door neighbor, testified that Lawson's mulch operation did not qualify as an agricultural use because it was a "second business venture." He so concluded because Lawson did not grow the trees on his land and it was not Lawson's primary business to grow trees and cut them to make mulch. Lawson merely processed the mulch and then transported it to another location where it was sold. Applegate also objected because the odors from the dead wood and the diesel fumes of the truck were so offensive that he and his family could not even sit outside. He also noticed that the insect population in the area increased to such an extent that he had to have his house and foundation sprayed for insects twice in 1990. He also expressed concerns about the traffic hazards posed by the trucks as well as concerns about the potential decrease in the property value of the homes in the area if Lawson were permitted to operate the mulch business.

Several of Lawson's neighbors testified in favor of the use. Charlie Coffey stated that the mulching production did not bother him at all. Eugene Weinall testified that, to his knowledge, the operation did not bother anyone around the property and, in fact, the mulch might have been beneficial to the farmers. Richard Wood stated that Lawson consistently gave him some of the mulch, which Wood used in his garden. In Wood's view, the mulching operation was "associate(d) with an agricultural product and [he used] it as such."

Lawson testified as to the specifics of the mulching procedure. He first purchased tree bark from local commercial sawmills. At the time of the purchase, the bark was already in a rough mulch form. The bark was then commercially transported to his property where he would then run the bark through a hammer mill. The mill ground the bark into a finer form of mulch. The mulch was then commercially transported to Burkhardt's Nursery for resale. Lawson testified that the majority of the mulch was sold either wholesale to distributors or at retail for individual use. However, Lawson

presented no documentation which would have supported his contention that most of the mulch was resold for farming purposes.

Lawson also presented evidence as to the various agricultural uses for mulch. These included weed prevention, water conservation in the soil, reduced pesticide usage, as well as general use by riding stables and cattlemen.

John Burkhart testified during the conditional use application phase of the hearing. Burkhart was Lawson's business partner in Burkhart's Greenhouse and Nursery, which was located in Miamisburg, Ohio. Burkhart testified that part of the nursery business included the retail and wholesale sale of mulch. The nursery sold approximately 5,000 cubic yards of mulch a year to nonresidential customers. Part of the reason Burkhart considered the sale of mulch to be an agricultural service was that he considered the nursery business to be primarily an agricultural service.

Alan J. Statman, Lawson's attorney, stated that Lawson's operation was the only source of mulch in Miami Township. Thus, he argued, the mulching operation was necessary for the district. Although Statman was not offering sworn testimony when he made this statement, no one objected to his comments. This apparently was the only affirmative "evidence" as to the necessity of the use. The MCPC letter from Klosterman, quoted *supra*, was to the effect that farming operations do not normally involve the use of mulch.

As noted *supra*, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, and refrain from substituting its judgment for that of the agency in areas of administrative expertise. With these limitations upon the trial court in mind, we conclude that the trial court erred in concluding that the decision of the BZA was unreasonable and contrary to the preponderance of the evidence.

Where to draw the line between services that are "agricultural" and those that are not, where the zoning ordinances provide no express guidance, is necessarily commended to the discretion of the BZA, whose expertise is entitled to deference. An "agricultural service," by definition, "primarily serves the farming community." A preponderance of the evidence before the BZA supported its determination that Lawson's mulching operation did not primarily serve the farming community. There was an emphatic statement from the MCPC that farmers do not use mulch. Foster testified that mulch served almost no agricultural purpose. To be sure, there was evidence tending to give "agriculture" an expansive meaning, and tending to establish that mulch can be used in farming operations. But Lawson did not establish that his mulch was used by the farming community, which was essential to

qualifying his mulching operation for consideration as the conditional use of "agricultural service." Having determined that Lawson failed to establish that his mulching operation was an "agricultural service," it was unnecessary for the BZA to consider whether the operation was "needed and appropriate."

Since, as a matter of law, the preponderance of the evidence supported the BZA's denial of the conditional use application, the common pleas court could not reasonably hold to the contrary.

The second assignment is sustained.

The judgment of the trial court will be reversed. The decision of the BZA will be reinstated.

*Judgment accordingly.*

WILSON and BROGAN, JJ., concur.