DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants appeal from the Athens County Court of Common Pleas' dismissal of their consolidated administrative appeals brought *Page 2 
pursuant to R.C. 2506.01, for lack of standing. Appellant's contend that the trial court 1) erred to their prejudice in dismissing them from the consolidated administrative appeal for failure to establish the "active participation" element of the standing doctrine; 2) erred to their prejudice in dismissing them from the consolidated administrative appeal for failure to establish the "direct effect/unique harm" element of the standing doctrine; 3) erred to the prejudice of Appellants Fahl and Stokes in dismissing them from the consolidated administrative appeal in reliance upon evidence not contained in the record; and 4) erred to their prejudice in dismissing the consolidated administrative appeal for failure to establish standing pursuant to Ohio's sunshine law.
 {¶ 2} Because we find that Appellants Herron, Johansen and Mattson did not meet the "active participation" element of the standing doctrine and failed to establish an exception to the element, we overrule Appellants' first assignment of error. Likewise, because we find that Appellants Ammarell, Grim, Mattson, Fahl and Stokes did not provide prima facie evidence of the "direct effect/unique harm" element of the standing doctrine, we overrule Appellants' second assignment of error. Further, we disagree with Appellants' Fahl and Stokes contention that the trial court dismissed them from the consolidated administrative appeal in reliance upon evidence not *Page 3 
contained in the record and, as such, we overrule Appellants' third assignment of error. Finally, in light of our determination, infra, that Appellants did not properly bring a claim alleging a violation of R.C.121.22, commonly referred to as Ohio's Sunshine Law, we decline to address Appellants' fourth assignment of error. Accordingly, we affirm the trial court's dismissal of Appellants' administrative appeal for lack of standing.
 I. Facts {¶ 3} Appellants are property owners that live on or near Morris Avenue in Athens, Ohio. One end of Morris Avenue is adjacent to an area of land owned by Ohio University ("OU"). None of the Appellants have property contiguous to the land owned by OU. OU proposed to allow National Church Residences ("NCR") to develop and construct a retirement center on the land. In connection with this plan, two ordinances were proposed and considered by the Athens City Council ("Council"). The first ordinance, Ordinance 0-120-05, dealt with OU's and NCR's proposed planned unit development ("PUD"). The second ordinance, Ordinance 0-133-05, granted OU a revocable license to encroach upon the city's Morris Avenue right-of-way in the development and construction of the PUD. *Page 4 
 {¶ 4} Appellants Ammarell, Grim, Fahl and Stokes participated in the administrative proceedings in which these ordinances were discussed, considered and ultimately passed. Appellants Herron, Johansen and Mattson did not attend or otherwise participate in the administrative proceedings. Council passed both ordinances on December 29, 2005, in a special meeting in which it is undisputed that all Appellants received proper notice. Several Appellants actually attended the special meeting and were permitted to speak in opposition to the passage of the ordinances.
 {¶ 5} On January 29, 2006, Appellants Christine Fahl, et al, filed two administrative appeals from Council's passage of the subject ordinances. The appeals were filed pursuant to R.C. 2506.01. The trial court ordered the parties to submit briefs on the issue of subject matter jurisdiction and standing. Subsequently, OU and NCR both filed motions to intervene in the appeals of the subject ordinances, which were granted by the trial court. The trial court's ruling was issued in two different decisions. The trial court's first decision, issued on March 22, 2006, found that the court had subject matter jurisdiction, but dismissed Appellants Ammarell, Grim, Mattson, Johansen and Herron for lack of standing. However, the trial court found that Appellants Fahl and Stokes had presented a prima facie case for standing and allowed their appeals to proceed. *Page 5 
 {¶ 6} An evidentiary hearing was held on May 5, 2006. At the hearing, Appellants presented expert testimony in support of their claim that development and construction of the PUD would diminish the value of the properties due to increased risk of flooding, increased traffic and loss of green space. Appellees presented expert testimony contradicting the Appellants' expert testimony. Appellees' experts testified that the development and construction of the PUD would cause little, if any, increased risk of flooding to Appellants' properties. Appellees' experts further testified that while traffic may increase on portions of Morris Avenue, the portions of the street in which Appellants reside would be unaffected. Although some testimony was provided regarding diminution in property value due to loss of green space, the trial court refused to consider such evidence in making its decision, based on the reasoning that the land at issue was not actually green space, but rather was property privately owned by OU. Further, the trial court reasoned that even if the land were considered public property for public use and enjoyment, Appellants could not claim that they suffered any unique harm, different from that suffered by the community at large, from the loss of the space.
 {¶ 7} On June 5, 2006, the trial court ultimately dismissed the remaining Appellants, Fahl and Stokes, based on lack of standing. It is from *Page 6 
these dismissals for lack of standing that Appellants now bring their current appeal, assigning the following errors for our review.
 II. Assignments of Error {¶ 8} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN DISMISSING THEM FROM THE CONSOLIDATED ADMINISTRATIVE APPEAL FOR FAILURE TO ESTABLISH THE `ACTIVE PARTICIPATION' ELEMENT OF THE STANDING DOCTRINE.
 {¶ 9} II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN DISMISSING THEM FROM THE CONSOLIDATED ADMINISTRATIVE APPEAL FOR FAILURE TO ESTABLISH THE `DIRECT EFFECT/UNIQUE HARM' ELEMENT OF THE STANDING DOCTRINE.
 {¶ 10} III. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS FAHL AND STOKES IN DISMISSING THEM FROM THE CONSOLIDATED ADMINISTRATIVE APPEAL IN RELIANCE UPON EVIDENCE NOT CONTAINED IN THE RECORD.
 {¶ 11} IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN DISMISSING THE CONSOLIDATED ADMINISTRATIVE APPEAL FOR FAILURE TO ESTABLISH STANDING PURSUANT TO OHIO'S SUNSHINE LAW."
 III. Legal Analysis {¶ 12} In their first assignment of error, Appellants contend that the trial court erred to their prejudice in dismissing them from the consolidated administrative appeal for failure to establish the "active participation" element of the standing doctrine. Thus, we begin our analysis with a review of the standing requirements, as well as with an explanation of the appellate *Page 7 
role in reviewing a trial court's dismissal for lack of standing. R.C.2506.04 sets forth the roles of the common pleas and appellate courts in reviewing administrative decisions as follows:
 "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause * * *. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code."
 {¶ 13} Thus, the role of an appellate court in a RC. 2506.01 appeal is limited to reviewing questions of law, which the court reviews de novo, and to determining whether the trial court abused its discretion in applying the law. Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34,465 N.E.2d 848, fn. 4; Lawson v. Foster (1992), 76 Ohio App.3d 784,603 N.E.2d 370. In Kisil, the court commented that R.C. 2506.04 "grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Id.; Prokos v. Athens City Bd. of Zoning Appeals (July 13, 1995), Athens App. No. 94CA1638, 1995 WL 416947. The court further stated that "[w]ithin the ambit of `questions of law' for appellate court review would be an abuse of discretion by the *Page 8 
common pleas court." Id.; accord Irvine v. Ohio Unemp. Comp. Bd. ofRev. (1985), 19 Ohio St.3d 15, 20, 482 N.E.2d 587; Wurzelbacher v.Colerain Twp. Bd. Of Trustees (1995), 105 Ohio App.3d 97, 100,663 N.E.2d 713. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." In re Jane Doe 1 (1991),57 Ohio St.3d 135, 137, 566 N.E.2d 1181.
 {¶ 14} The common-law doctrine of standing holds that only those parties who can demonstrate a present interest in the subject matter of the litigation and who have been prejudiced by the decision of the lower court possess the right to appeal. Willoughby Hills v. C.C. Bar'sSahara (1992), 64 Ohio St.3d 24, 26, 591 N.E.2d 1203; citing OhioContract Carriers Assn., Inc. v. Pub. Util. Comm. (1942),140 Ohio St. 160, 161, 42 N.E.2d 758. The burden of proof to establish standing lies with the party seeking to appeal. Id.; Zelnick v. Troy City Council
(1997), 85 Ohio Misc.2d 67, 74, 684 N.E.2d 381.
 {¶ 15} In Roper v. Richfield Twp. Bd. of Zoning Appeals (1962),173 Ohio St. 168, 180 N.E.2d 591 syllabus, the Supreme Court of Ohio determined that standing to bring an administrative appeal under R.C.2506.01 lies with "[a] resident, elector and property owner of a township, *Page 9 
who appears before a township Board of Zoning Appeals, is represented by an attorney, opposes and protests the changing of the zoned area from residential to commercial, and advises the board, on the record, that if the decision of the board is adverse to him he intends to appeal from the decision to the court." The court later narrowed the class of persons who possess standing to those whose property rights are "directly affected" by the contested administrative order.Schomaeker v. First Nat'l Bank (1981), 66 Ohio St.2d 304, 311-312,421 N.E.2d 530.
 {¶ 16} Initially, we note that a review of the record reveals that Appellants' first assignment of error actually only applies to Appellants Herron, Johansen and Mattson, as the trial court dismissed their appeals as a result of their failure to participate in the hearing process regarding the subject ordinance. In our view, by advancing this argument, Appellant's have implicitly conceded that they do not meet the active participation requirement of the standing doctrine. Rather, and in support of their assigned error, Appellants contend that they were not required to meet the "active participation" requirement of the standing doctrine because the City of Athens exceeded their authority in passing the subject ordinances, which they assert creates an exception to the standing requirement. Appellants cite the reasoning ofAlihassan v. Alliance Bd. of Zoning Appeals (Dec. 18, *Page 10 
2000), Stark App. No. 1999CA00402, 2000 WL 1867737, and Kraus v.Put-In-Bay Twp. Bd. of Zoning and Appeals, Ottawa App. No. OT-04-011,2004-Ohio-4678, in support of their contention.
 {¶ 17} In Alihassan, the appellant's motion to dismiss the appellee's administrative appeal for lack of standing was denied by the trial court. In that case, the court of appeals affirmed the decision of the trial court, refusing to dismiss the appellee's appeal for lack of standing in light of its finding that the appellee had not received proper notice of the administrative proceedings and therefore could not have actively participated in them. Alihassan, supra. Thus, theAlihassan court recognized an exception to the active participation requirement where an appellant is not provided with sufficient notice and therefore cannot actively participate. On its face,Alihassan is factually distinguishable from the case sub judice. Here, Appellants do not argue that they did not participate because they did not have notice of the administrative proceedings, rather, they argue that Alihassan provides other exceptions to the active participation requirement of the standing doctrine.
 {¶ 18} In addition to creating an exception to the standing doctrine when an appellant lacks notice, the Alihassan court further stated as follows:
 "Tantamount to these situations are the following two situations: 1) the notice requests a remedy substantially different from the one granted by the *Page 11 
tribunal * * * and/or 2) the notice requests a remedy that the tribunal is not authorized to give * * *. Participation before a commission cannot be required of a person in order to preserve the right to appeal the commission's decision when there is no reason for the person to expect the commission's decision from the notice received and/or from knowledge of the limits of the commission's authority. In other words, requiring participation to preserve the right to appeal presupposes sufficient notice to the participant." Alihassan, supra.
 {¶ 19} Based upon the reasoning of Alihassan, Appellants assert that there is an exception to the active participation requirement when a political subdivision exceeds its authority. Appellants further assert that they fit within this exception, claiming that the City of Athens exceeded its authority in three ways: 1) as a result of non-compliance with the Athens City Code; 2) in failing to timely implement a revocable license ordinance; and 3) by violating Ohio's Sunshine Law.
 {¶ 20} Initially, we note that Appellants' position is supported solely by authority from other appellate districts, which is non-binding on this Court. Further, this Court has recognized active participation as a requirement in establishing standing to bring an administrative appeal pursuant to R.C. 2506.01. See, Jenkins v. Gallipolis (1998),128 Ohio App.3d 376, 715 N.E.2d 196. However, assuming arguendo that an exception to the active participation requirement does, in fact, exist where a political subdivision exceeds its authority, we will evaluate all three of Appellants' allegations. *Page 12 
 {¶ 21} First, Appellants contend that Appellees failed to comply with the applicable PUD requirements as provided in the Athens City Code. Appellants assert that although ACC section 21.09.18 requires the developer to submit five copies of the final plan to the zoning administrator before final approval, the Commission approved the PUD ordinance without requiring the submission of final plans. Thus, Appellants argue that they were not required to show active participation in the administrative proceedings. Appellants' argument is based upon the premise that the Commission approved the PUD ordinance without requiring submission of final plans; however, other than their mere allegation, Appellants have offered nothing to substantiate their assertion.
 {¶ 22} None of the Appellees address the issue of whether, in fact, the PUD ordinance was approved without submission of final plans. Rather, they respond by distinguishing the case sub judice from the cases cited by Appellant, pointing out that notice was at issue inAlihassan and Krause, and is not at issue in the present case. Our review of the meeting minutes, however, indicates that final plans may have been submitted. At the special meeting held on December 29, 2005, Appellant Ammarell commented that the fact that special conditions were added to the ordinance in order to alleviate concerns of residents should not take the place of the submission of *Page 13 
plans by the developer. In response to this statement, the meeting minutes reflect that George Barardi, of NCR, responded that planswere submitted to the planning commission. Thus, we conclude that Appellants have not clearly demonstrated that Appellees exceeded their authority in approving the PUD.
 {¶ 23} Further, we find persuasive the arguments of Appellees with regard to whether this Court should adopt the reasoning ofAlihassan, supra. As Appellees note, the Alihassan decision was criticized in National Amusements, Inc. v. Union Twp. Bd. of ZoningAppeals, Clermont App. No. CA2002-12-107, 2003-Ohio-5434. In considering an argument very similar to one presently before this court, theNational Amusements court found that the Alihassan decision, "with one judge dissenting, and another concurring on separate grounds, is not particularly persuasive authority." Id. Additionally, the NationalAmusements court found, with regard to the newly identified exceptions to the active participation requirement, that "the portion of the decision * * * fails to cite authority in support of its contentions." Id. Despite the appellant's claim that he was exempt from the active participation requirement of the standing doctrine because the zoning board exceeded its authority and because the relief granted by the zoning board differed from the relief requested, the NationalAmusements *Page 14 
court found that the appellant "failed to participate at the administrative hearing and consequently lacked standing to pursue an appeal." Id.
 {¶ 24} We find the reasoning contained in National Amusements, supra, to be more persuasive than the reasoning of Alihassan, supra. Further, in rejecting the reasoning of Alihassan and accepting the reasoningof National Amusements, we find that we also adhere to our previous reasoning, which, as previously set forth, has recognized that active participation is a prerequisite to establishing standing. Of course, we agree with the reasoning of Alihassan, and for that matter, NationalAmusements, to the extent that an exception should be recognized where it is demonstrated that an appellant did not receive adequate notice. However, in the case sub judice, Appellants do not claim that their failure to actively participate in the administrative proceedings stemmed from their lack of notice of the proceedings. Thus, we find that Appellants have not clearly demonstrated that Appellees did, in fact, exceed their authority, and assuming arguendo that they did, we reject the reasoning of the Alihassan court which would create an additional exception to the standing doctrine in the event that Appellees had exceeded their authority.
 {¶ 25} Appellants next contend, under their first assignment of error, that Appellees exceeded their authority in failing to timely implement the *Page 15 
revocable license ordinance. In light of our reasoning with respect to Appellants' first allegation that Appellees exceeded their authority in passing the subject PUD ordinance, we decline to address the merits of Appellants argument. We conclude that, based upon our prior consideration and rejection of the reasoning voiced in Alihassan, even if Appellees did exceed their authority in failing to timely implement the revocable license ordinance, such action does not create an exception to the active participation requirement of the standing doctrine. Thus, because Appellants failed to actively participate in the administrative proceedings and voice their concerns at the time within which corrective action could have been taken, we find that they have waived their right to now complain of Appellees' actions.
 {¶ 26} Appellants' last contention under their first assignment of error is that they are exempt from the active participation requirement of the standing doctrine because Appellees violated Ohio's Sunshine Law in passing the subject PUD. Appellants contend that the special meeting approving and passing the ordinance was conducted in violation of Ohio's Sunshine Law and were therefore invalid. Appellants further contend that, as a result, they were not required to demonstrate active participation because Appellees exceeded their authority. We must reject Appellants' *Page 16 
contention that they are exempt from the active participation requirement for the same reasons we have rejected their prior arguments.
 {¶ 27} Further, because Appellants failed to bring an original action in the common pleas court alleging a violation of the sunshine law and requesting appropriate relief, we decline to address Appellants' arguments regarding alleged violations of the Sunshine Law. Appellants brought this action as an appeal pursuant to R.C. 2506.01. In their brief in support of jurisdiction and standing, filed at the trial court level, Appellants indicated that violations of R.C. 121.22, Ohio's Sunshine Law, had occurred but they conceded that a Sunshine Law claim was not properly before the court. The trial court dismissed Appellants' appeal for lack of standing without addressing the Sunshine Law issues raised by Appellants in their brief. Appellants now appeal, again alleging violations of the Sunshine Law, failing to realize that such allegations, if not properly before the trial court, are not properly before this Court either.
 {¶ 28} Essentially, Appellants filed an administrative appeal pursuant to R.C. 2506.01 and in that context attempted to assert violations of the Sunshine Law. In Pfeffer v. Bd. of County Com'rs. of PortageCounty (July 13, 2001), Portage App. No. 2000-P-0030, 2001 WL 799850, the court explained that "an action brought to enforce the sunshine law is an action *Page 17 
with original jurisdiction in the court of common pleas. It is not an appeal." While the facts in Pfeffer are not identical to the facts presently before us, they are quite similar and as such, the reasoningof Pfeffer is instructive. In Pfeffer, the appellant labeled his action as an administrative appeal under R.C. 307.56, but within his appeal, he actually made a claim for relief indicating that the sunshine law had been violated and asked the court to impose penalties as per law. Id. As a result, the Pfeffer court remanded the matter to the trial court to conduct a hearing to determine if there had been a violation of the sunshine law.
 {¶ 29} Here, Appellants did not actually raise a claim alleging a violation of the sunshine law, nor did they ask that the court impose appropriate penalties. Instead, Appellants merely asserted that violations of the sunshine law occurred in a brief in which they were attempting to establish standing to bring their R.C. 2506.01
administrative appeal. At no point have Appellants actually brought an original action in the court of common pleas alleging a violation of the sunshine law. While Appellants may be entitled to bring such a separate action, we conclude that they cannot do so in the narrow context of an administrative appeal. Thus, we cannot properly consider Appellants' arguments regarding these issues and certainly cannot presume such a violation, in the absence of a finding of such a *Page 18 
violation, in order to exempt Appellants from the standing requirements to bring their current appeal. Accordingly, we overrule Appellants' first assignment of error.
 {¶ 30} In their second assignment of error, Appellants contend that the trial court's decision to dismiss their administrative appeal constitutes reversible error because they alleged prima facie facts, circumstances, and evidence to establish the ordinances would uniquely harm and directly affect them and their respective interests. It appears that this assignment of error applies to Appellants Ammarell, Grim, Mattson, Fahl, and Stokes, as the trial court dismissed their claims for lack of standing because Appellants failed to demonstrate that they were directly affected or suffered a unique harm by the passing of the ordinances.[2] Specifically, Appellants assert that the trial court erred in refusing to consider diminution of property value as a result of loss of green space as a unique harm sufficient to confer standing to bring a R.C. 2506.01 administrative appeal. *Page 19 
 {¶ 31} Our standard of review regarding this issue is the same as in the first assignment of error. As previously set forth, the role of an appellate court in a R.C. 2506.01 appeal is limited to reviewing questions of law, which the court reviews de novo, and to determining whether the trial court abused its discretion in applying the law.Kisil v. Sandusky, supra, at 34, fn. 4; Lawson v. Foster, supra. Further, as provided in Kisil, R.C. 2506.04 "grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Id.;Prokos, supra. .
 {¶ 32} In Schomaeker, supra, at 311-312, 421 N.E.2d 530, the Supreme Court of Ohio narrowed the class of persons who possess standing to pursue an administrative appeal to those whose property rights are "directly affected" by the contested administrative order. At the trial court level, Appellants asserted that they were directly affected by and suffered unique harm from the diminution of their property value associated with loss of available green space. The trial court refused to consider loss of green space as evidence of unique harm for a variety of reasons. First, the trial court based much emphasis on the fact that the green space at issue was not *Page 20 
a public park, but instead was private property owned by Ohio University. Secondly, relying on Willoughby Hills v. C.C. Bar'sSahara (1992), 64 Ohio St.3d 24, 27, 591 N.E.2d 1203, the trial court reasoned that even if the green space at issue was considered publicly owned land, such loss would be shared by the community, in general, and could not be considered a harm unique to Appellants. See WilloughbyHills, supra (where the Court reasoned that "[t]he private litigant has standing to complain of harm which is unique to himself. In contrast, a private property owner across town, who seeks reversal of the granting of a variance because of its effect on the character of the city as a whole, would lack standing because his injury does not differ from that suffered by the community at large.").
 {¶ 33} We note that there is a marked absence of case law regarding the specific issue of whether or not diminution of property value associated with loss of green space constitutes a unique harm sufficient to demonstrate that a property owner has been directly and adversely affected by the administrative actions of a planning and zoning board. Nonetheless, we find the trial court's reliance on the reasoning ofWilloughby Hills, supra, to be persuasive and sound. Thus, we conclude that the trial court did not abuse its discretion in refusing to consider diminution of property value associated with loss of green space as evidence that Appellants suffered a unique harm *Page 21 
from and were directly affected by the passage of the subject ordinances. Further, despite Appellants' arguments to the contrary, we conclude that the fact that the alleged "green space" at issue is private property owned by Ohio University, rather than public property dedicated for recreational purposes for use by the community at large, is of great importance. Ohio University, as the owner of this property, has a right to develop the property for its own use. Therefore, even if this property was not utilized by NCR for the construction of a retirement center, Ohio University could develop it for other uses, such as dormitories or other educational uses.
 {¶ 34} In their brief, Appellants cite this Court to testimony by their expert regarding the effects of loss of green space on their property values. However, because the General Assembly did not vest this court with the power to weigh the evidence like a common pleas court, we decline to engage in an analysis of whether Appellants presented evidence that outweighed the evidence presented by Appellees. Accordingly, we cannot conclude that the trial court abused its discretion in failing to find that Appellants had demonstrated that they were directly affected by and suffered unique harm from the passage of the subject ordinances. Thus, we overrule Appellants' second assignment of error. *Page 22 
 {¶ 35} In their third assignment of error, Appellants contend that the trial court's June 5, 2006 decision dismissing them was contrary to the law and that the trial court abused its discretion when it ignored the evidence presented or otherwise considered facts not in evidence. Initially, we note that the arguments advanced under this assignment of error relate only to Appellants Fahl and Stokes, as they were the only Appellants dismissed by the June 5, 2006 trial court decision.
 {¶ 36} Appellants advance two arguments under this assignment of error. First, Appellants assert that the trial court erred when it ignored evidence presented regarding loss of green space. Appellants again argue that the loss of green space is a unique harm and that the trial court committed reversible error in failing to consider this evidence. In light of our prior findings in Appellants' second assignment of error regarding loss of green space, we find these duplicative arguments not well taken. In accordance with our foregoing reasoning, we cannot conclude that the trial court abused its discretion in refusing to consider evidence offered by Appellants related to this particular issue.
 {¶ 37} Secondly, Appellants assert that the trial court committed reversible error when it concluded that a change in the characteristics of the Morris Avenue neighborhood, as a consequence of the proposed retirement *Page 23 
center, from single family owner-occupied homes to rental properties, would actually increase property values for Appellants. Appellants specifically challenge the trial court's finding that a change in character from owner-occupied homes to tenant-occupied homes would increase Appellants' property values. Appellants further contend that the trial court relied on evidence not contained in the record in making this finding, arguing that the only citation to this assertion appears in the form of a question posed by Appellees' counsel, over objection.
 {¶ 38} A review of the record indicates that the trial court did, in fact, state that tenant-occupied homes, as opposed to owner-occupied homes, would increase Appellants' property values. However, the trial court made this assertion merely as one reason, in addition to other reasons, in support of its finding that the weight of Appellants' expert's testimony should be lessened. In addition to making a finding that an increase in tenant-occupied homes would increase Appellants' property values, the trial court also stated, in support of its conclusions with regard to the weight to be afforded this expert testimony, that Appellants' expert erroneously used loss of green space in reaching his determination that Appellants' property values would decrease. Additionally, the trial court concluded that the testimony provided *Page 24 
by Appellants' expert, with respect to increased traffic on Morris Avenue, was not persuasive.
 {¶ 39} As previously noted, R.C. 2506.04 "grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Kisil v.Sandusky, supra, at 34, fn. 4; Prokos, supra. Thus, because the General Assembly did not vest this court with the power to weigh the evidence like a common pleas court, we cannot second guess the trial court's decisions regarding the proper weight to be afforded to the evidence. Accordingly, even though the trial court cited information not properly contained within the record, a review of the record, as well as the trial court's decision and judgment entry, indicates that the trial court's decision was still supported by other competent, credible evidence. As a result, we cannot conclude that the trial court abused its discretion by relying on evidence not in the record. Accordingly, we overrule Appellants' third assignment of error.
 {¶ 40} In their fourth and final assignment of error, Appellants contend that the trial court's decision dismissing them constitutes reversible error as they maintain express standing to enjoin actions of council that are taken in *Page 25 
violation of Ohio's sunshine law. On the surface, we agree with Appellants' contention. Appellants do have standing to bring an action seeking to enjoin actions of council that are taken in violation of the sunshine law. However, as previously discussed, Appellants cannot maintain that action solely as part of an administrative appeal pursuant to R.C. 2506.01. While Appellants have standing to bring such an action, they have failed to bring an original action in the court of common pleas alleging a violation of the sunshine law. As the court inPfeffer, supra, stated, "an action brought to enforce the sunshine law is an action with original jurisdiction in the court of common pleas. It is not an appeal." Thus, we do not reach the merits of Appellants' arguments that Appellees violated Ohio's sunshine law in passing the subject ordinances, as they were not properly before the trial court and are not properly before us.
 {¶ 41} Accordingly, we overrule Appellants' first, second, third and fourth assignments of error and affirm trial court's dismissal of their appeal for lack of standing.
 JUDGMENT AFFIRMED. *Page 34 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment and Opinion as to Assignment of Error IV and Concurs in Judgment Only as to Assignments of Error I, II, and III. Kline, J.: Concurs in Judgment Only, in part, and Dissents in part as to Assignments of Error I and III; Dissents as to Assignments of Error II and IV with Opinion.
[2] Although Appellants Ammarell's, Grim's, Mattson's, Fahl's and Stokes' appeals were dismissed, in part, due to their failure to demonstrate that they were directly affected by and suffered a unique harm from the passage of the subject ordinances, because Appellants' second assignment of error limits the scope of the issue to whether or not diminution in property value due to loss of green space can constitute evidence of a unique harm, we only address this assignment of error as it relates to Appellants Ammarell, Fahl and Stokes. The trial court dismissed Appellant Grim on basis that her asserted unique harm, "overall decline in city living standards," would not affect her differently than the community at large. The trial court dismissed Appellant Mattson on the basis that she failed to demonstrate that she was directly affected or suffered a unique harm by the passage of the subject ordinances; however, her alleged unique harm was unrelated to the loss of green space. *Page 26